United States District Court
Southern District of Texas
FILED
AUG 22 1997
Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| FELIPE MOLINA-URIBE, § | |
| Movant, § | |
| § | |
| vs. § | CRIMINAL NO. B-87-01 |
| § | |
| UNITED STATES OF AMERICA, § | |
| Respondent, § | |
| (CIVIL ACTION NO. B-97-97). § | |

**UNITED STATES' ANSWER, MOTION TO DENY RELIEF UNDER RULE 8(A), 28 U.S.C. FOLL. § 2255, AND SUPPORTING BRIEF**

The United States of America, Plaintiff-Respondent, by the United States Attorney for the Southern District of Texas, moves this court to deny relief under Rule 8(a), 28 U.S.C. foll. § 2255.

1. **Jurisdiction.** This court has jurisdiction under 28 U.S.C. § 2255.

2. **Procedural history.** Molina-Uribe was charged by superseding indictment on February 21, 1987, with conspiracy to possess marihuana with intent to distribute in violation of 21 U.S.C. § 846 (count 1); the underlying substantive offense in violation of 21 U.S.C. § 841(a)(1) (count 2); murder of a federal officer in violation of 18 U.S.C. §§ 1111, 1114 (count 3); and, use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (count 4). He pled guilty to the drug offenses on April 13, 1987, but proceeded to trial on the latter two counts. A jury returned a guilty verdict to both on April 16, 1987. He was sentenced by the district court on May 13, 1987, as follows: Counts 1 and 2, 25 years in the custody of the Bureau of Prisons and four years supervised release; Count 3, life imprisonment; Count 4, five years incarceration. The 25-year sentences were ordered to run consecutive to each other but

concurrent to the life sentence; the 5-year sentence for the firearm offense was ordered to run consecutive to all other prison sentences.

Molina appealed his convictions and sentences to the Fifth Circuit. On August 24, 1988, the Fifth Circuit affirmed his convictions on count 1 but remanded the case for deletion of the supervised release term imposed on the 21 U.S.C. § 846 offense; reversed his conviction on count 2, and remanded so that he be allowed an opportunity to plead anew; and, affirmed his convictions on counts 3 and 4. *United States v. Molina-Uribe*, 853 F.2d 1193 (5th Cir. 1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145 (1989).

On June 12, 1989, Molina filed a motion to reduce sentence under FED. R. CRIM. P. 35, asking this court to "exercise its equity power and grant a little more mercy to this defendant", which the government opposes as an "ultra vires" request. This was subsequently withdrawn on Molina's request on August 10, 1989. The government subsequently moved to dismiss count 2 and the supervised release term was vacated per the Fifth Circuit's order.

On December 29, 1989, Molina moved this court to appoint counsel to represent him on any post-conviction proceedings. According to the docket sheet, no further action was taken by Molina until he filed the present 28 U.S.C. § 2255 motion on February 25, 1997.

3. **Transcripts.** The transcripts of the trial are on file with this court.

4. **Allegations.** In support of his motion, Molina claims that he received ineffective assistance of counsel at trial, sentencing and on direct appeal. In particular, he claims that:

    a)     trial counsel failed to allow him to testify in his own defense;

    (b)     trial counsel failed to investigate and interview witnesses;

    (c)     trial counsel failed to obtain an independent expert to analyze Molina's blood specimen to determine his level of intoxication;

-2-

    (d)      trial counsel failed to bring before the jury his state of mind;

    (e)      trial counsel failed to request a jury instruction on self-defense or manslaughter;

    (f)      counsel failed to preserve these issues and raise them on direct appeal.

5. **Evidentiary hearing.** With the exception of (a) above, the allegations raised by Molina may properly be resolved on the basis of the record before this court. No evidentiary hearing is required with respect to these claims. *United States v Smith*, 915 F.2d 959, 964 (5th Cir. 1990); *United States v Santora*, 711 F.2d 41 (5th Cir. 1983).

With regard to Molina's claim that he was denied his right to testify, the undersigned cannot attest with accuracy what discussion occurred before the court regarding Molina's election not to testify. At present, the undersigned has access to only portions of Molina's trial record, which are on file in Brownsville. Because this determination is crucial for proper analysis of his claim (something the undersign did not realize when she originally accumulated the documents to answer the petition), the undersigned is in the process of having the entire record duplicated and mailed to her for careful review. Thus, whether an evidentiary hearing may be required cannot be determined at this time.

The factual question of whether the defendant acceded to the attorney's advice in not testifying most likely cannot be resolved without expansion of the record. While the United States believes that Molina's unsubstantiated assertions are insufficient to entitle him to an evidentiary hearing, this court may direct the expansion of the record under Rule 7(b) with the affidavits of trial counsel and defer under Rule 8(a) the determination whether an evidentiary hearing is required until that is completed.

6  **Answer, motion to deny relief, and supporting brief.**

Molina's ineffective assistance of counsel claim is reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984). To succeed on such a claim, Molina must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume the counsel has exercised reasonable professional conduct." *United States v. Samples*, 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted). Second, he must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-44 (1993). At the guilt phase, the petitioner must show a "reasonable probability" that the jury would have otherwise harbored a reasonable doubt concerning guilt. *Carter v. Johnson*, 110 F.3d 1098 (5th Cir. 1997). The burden of proving an ineffective assistance of counsel claim rests with the petitioner. Molina challenges his counsel's effectiveness only as to the murder charges; he does not claim that his guilty pleas are involuntary based on ineffective assistance.

(a) **Right to testify.**

Molina first claims that he was denied his right to testify on his own behalf, a claim that was not raised on direct appeal. He claims that "the court would not allow him to because he (trial counsel) had not included Molina's name on the witness list and had not claimed an alibi defense whatever that meant." (*Motion* at 9-10). Molina, however, does not direct this court to that portion of the record where this allegedly occurred and there is no such reference on the docket sheet. While the undersigned does not have access to the entire transcripts at this time, Molina's statement is highly questionable as Molina appears to be referencing FED. R.CRIM. P. 12.1, which requires a defendant to serve notice of his intent to present an alibi defense. The testimony that Molina alleges he wanted to give does not rise to the level of an alibi defense. Rather, he claims that once the government witnesses began giving their version of the offense, he realized their testimony left out critical facts and was false. (*Motion* at 10). He wanted the jury to hear his version -- that no one told him Agent Ramos or Ortiz were federal agents (admitting, however, that someone mentioned they were cops); that the CI's could not have seen what was happening in the car because the trunk was up and they were to the rear of the vehicle; that when the struggle occurred, both Ortiz and Rodriguez were in the car; and, that he believed he was in a death struggle with three drug dealers.

Whether a district court has a *sua sponte* duty to conduct a colloquy with the defendant to determine whether his decision not to testify is knowing and voluntary, and the extent to which a waiver of the right to testify may be inferred, are issues which this circuit has not decided.[1] *See*

---

[1] Molina did not raise this issue on appeal and therefore must demonstrate cause and prejudice for failing to do so. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). The cause and prejudice standard is significantly more rigorous than even the plain error standard applied on direct appeal. *Id.* at 589. The "cause" standard requires a showing that "`some

-5-

*United States v. Ortiz*, 82 F.3d 1066, 1071 (D.C.Cir. 1996)(rejecting any *per se* requirement that the district court inquire directly of the defendant). A record completely silent on the issue, however, does not automatically command an evidentiary hearing. *Id.* At least three judges in the Fifth Circuit have taken the position that where the record is silent with regard to a defendant's desire to testify, it is appropriate to presume in a habeas proceeding that "the defendant acquiesced in his counsel's advice or otherwise made a voluntary choice not to testify." *Jordan v. Hargett*, 34 F.3d 310, 315 (5th Cir. 1994)(*Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994), *en banc review granted and panel decision vacated*, 42 F.3d 1483 (5th Cir. 1994), *case remanded*, 53 F.3d 94 (5th Cir. 1995) (deferring consideration of any constitutional issue of scope of right to testify, waiver of right to testify, failure to object, harmless error pending factual determination in district court; vacating panel decision and remanded for evidentiary determination once counsel was located).

While the Fifth Circuit has not yet addressed this issue, or what kind of threshold showing is necessary to entitle a defendant to an evidentiary hearing on the issue, the Seventh Circuit has required more than a defendant's unsubstantiated and "barebones" assertions on the issue:

> There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process

---

objective factor external to the defense'" prevented the defendant from raising on direct appeal the claim advanced in the § 2255 proceeding. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). To establish the requisite degree of prejudice to remedy his procedural default, Molina must demonstrate that any alleged error resulted in an "actual and substantial disadvantage" that infected his criminal proceedings "with error of constitutional dimensions." *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1992) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1992)). Molina has failed to allege facts which support a finding of either cause or prejudice to remedy his procedural default in failing to raise his claim that he was denied his right to testify on direct appeal.

unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify."

We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary -- and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify--to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim. The analogy is to the heightened pleading and substantiation required in certain civil rights cases. *Strauss v. City of Chicago*, 760 F.2d 765, 767-68 (7th Cir. 1985); *Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir. 1988); *Elliott v. Thomas*, 937 F.2d 1382, 1383-84 (9th Cir. 1991).

... The defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.

*Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

Molina's self-serving account of his attorneys' statements to him are insufficient to entitle him to an evidentiary hearing. His claims that he did not voluntarily waive his right to testify, and that he informed his counsel that he wanted to testify and that he made repeated attempts to convince them it was in his best interest to testify, are wholly unsubstantiated. So are his claims that he acquiesced to counsels' decision that he not testify because his counsel threatened to withdraw if he insisted on asserting his right. ("The closest thing to a waiver would be Molina's

silence once the attorneys had threatened to withdraw from the case and to let him continue on his own.")

    (b)    **Failure to investigate, interview witnesses, present defenses.**

Molina also claims that counsel failed to investigate or interview witnesses, and to present his theory of defense. His defense was that four people (Agent Ramos, CI Ortiz, CI Rodriguez, and Molina) were struggling between themselves for the revolver (*Motion* at 18), and that he was trying to push the gun away from his head (*Motion* at 10-11) when the gun discharged. In particular, he claims that counsel failed have conducted an independent examination of the fingerprint testing done on the revolver (*Motion* at 19). Even assuming an omission on the part of counsel, Molina cannot demonstrate the requisite prejudice inasmuch as the results of such tests would have been of minimal, if any, evidentiary value. It was not disputed that the revolver belonged to Agent Alvarez and had been placed in the side pocket of the undercover vehicle. According to Molina, the forensic evidence showed his fingerprints were not on the revolver. (*Motion* at 24). However, there was no dispute of the struggle between Agent Ramos and Molina over the revolver or of the fact that the weapon was discharged during that struggle. The gun fired more than once. The first shot hit Rodriguez in the hand and he backed away from the car. Two more shots were fired during the struggle, one of which hit Molina in the leg. Ortiz admonished Molina to release the gun and told him again that Agent Ramos was a federal agent. Further, the jury, *in fact*, was presented with the testimony of Ortiz that during the struggle Molina had stated to him in Spanish that he thought Agent Ramos and Ortiz were trying to steal the marihuana and to hurt him. It was after this that Molina forced the gun downward to Ramos' chest and fired the fourth shot fatally wounding him. Thus, the issue was one of credibility --

whether the jury believe Ortiz' testimony that he and Ramos had informed Molina of the fact that they were federal agents and whether the jury believed the government's theory that Molina had intentionally killed Ramos rather than accidentally killed him in self-defense or by mistake of fact.

As to Molina's claim that counsel failed to independently analyze his blood samples, counsel raised the specter of an intoxication defense at trial by introducing evidence that Molina had smoked marihuana and his statements that he had some "ionamines and pasadrenes" (which the Fifth Circuit found referenced a previous event and not one that had occurred on that day). Counsel requested an intoxication defense instruction. As the Fifth Circuit found, voluntary intoxication does not constitute an affirmative defense in this circuit but may be considered by the jury as a factor negating intent. *Id.*, at 1205. This instruction was denied by the district court with the finding that there was no evidence to support any claim of intoxication by Molina to any degree. The Fifth Circuit agreed and found that the record evidence, to the contrary, was "strong, amply sufficient, consistent, completely credible and clearly establishe[d] that Molina was not intoxicated." *Id.*, at 1206-07. The evidence was that Molina's use of marihuana on the day of the murder was minimal, at best, and the testimony based upon observation of him was that he was clearly coherent and in control at all times. Given this evidence, Molina's argument that additional drug testing would have disclosed evidence of drug intoxication sufficient to demonstrate an impaired mental state is wholly unrealistic and self-serving. In light of this, and the fact that the government's toxicology testing produced too low a level of alcohol content for him to even be considered under the influence, counsel pursue the better trial strategy. This was to argue that the combination of the alcohol and marihuana produced a higher intoxicating effect that either substance alone. Counsel, in fact, called the FBI chemist for this very purpose. *Id.*,

at 1207. Prevailing standards of review require this court valuate counsel's decision not to pursue a particular line of investigation must be assessed for reasonableness of in all the circumstances and to apply a heavy measure of deference to counsel's judgment. *Westley v. Johnson*, 83 F.3d 714, 719 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 773 (1997). Under this standard, Molina's claim does not rise to the level of a Sixth Amendment violation.

Molina claims that counsel failed to interview witnesses and investigation the background of two paid confidential informants, or Agent Ramos, who had a history of robbing drug dealer. His claim of uncalled witnesses is wholly conclusory. While he claims there exists "some evidence" of such a history, Molina does not identify what that evidence is or backup his claim with any facts. His statements are thus wholly conclusory and insufficient to state a cognizable claim. Moreover, the record reflects that counsel in fact filed numerous pretrial motions seeking exculpatory evidence and witness statements. Assuming, *arguendo*, that counsel failed to interview FBI Agent Gonzales, Molina presents nothing to demonstrate that the agent would have consented to the interview and in fact would have testified as Molina contends. No can he demonstrate that such omission would render the results of his trial fundamentally unfair. Whether CI [Rodriguez-]Ramirez told Agent Gonzales that no one in his presence told Molina he was under arrest or that they were federal agents, does not undermine Ortiz' testimony that he (Ortiz) told Molina that Agent Ramos was a federal agent and that Ramos replied in return, "I already told him he was arrested. . . ." *Id.*, at 1195. Further, the trial testimony was that Rodriguez could not testify as to Ortiz' statements because he did not hear them and was only paying attention to what he was doing at the time (*i.e.*, leaning through the car door, grabbing Molina's leg and getting shot in the hand). *Id.*, at 1195 n. 2.

Molina claims that his trial counsel failed to present his theory of the case; that is, that he acted in self-defense. As set out in the opinion of the Fifth Circuit, Molina's defense stated during opening argument was that he was the victim of a conspiracy and that Ramos' death was an assassination by DEA agents (Tr. 890-905). *Molina-Uribe*, 853 F.2d at 1200. During closing argument defense counsel also argued that Molina believed he was being attacked by dangerous drug dealers, that he fought back in self-defense after being shot with the first fire, and that he had no malice aforethought when the gun discharged as he was fighting for it. He also argued that if the jury believed Ortiz, then Molina was acting out of sudden passion and did not have the requisite intent to commit premeditated murder (Tr. 881-86). *Id.* Thus, contrary to Molina's argument almost ten years later, counsel in fact presented the very defense that he claims should have been presented. Further, contrary to what Molina claims (*Motion* at 22), trial counsel in fact had requested instructions on a voluntary manslaughter, sudden passion, self-defense, self defense apparent danger, and converse of self-defense (Defendant's requested jury instruction no. 1), intoxication (Defendant's requested jury instruction no. 3), assault one a federal officer (*i.e.*, "whether the Defendant knew the victim to be a Federal officer and only acted as he did because of a reasonable, good faith belief that he needed to defend himself against an assault by a private citizen). Unfortunately for Molina the government's evidence at trial refuted this defense and the jury rejected it.

As to his claim that the record demonstrated no "malice aforethought," this is a sufficiency issue that was raised on direct appeal and rejected. *Molina-Uribe*, 853 F.2d 1207. Molina is not entitled to relitigate it on collateral attack. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir.

1996); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977 (1986).

7.  **Statute of limitations.**

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted. AEDPA amended § 2255 to impose a one-year limitation on filing petitions:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Applying a literal interpretation of the above statute, this Court should measure one year from the most recent date applicable in subsections (1) through (4) to determine whether Molina timely filed his § 2255 petition. *Clarke v. United States*, 955 F.Supp. 593, 595 (E.D. Va. 1997). Under subsection (1), Molina's conviction became final in 1989 when the Supreme Court denied certiorari review. He has delayed almost eight years to bring this initial 28 U.S.C. § 2255 petition, well in excess of the one-year statute of limitation imposed under the new Act under a literal interpretation.

Notwithstanding, the Department of Justice ("DOJ") has promulgated a policy letter that does not adopt the above literal interpretation of § 2255's time limitation. Instead, DOJ construes

the limitation period to include a one-year grace period for § 2255 petitions filed after April 24, 1996, attacking convictions that became final before the amendment date. While the United States Attorney for the Southern District of Texas has been directed to follow the Department's policy in its § 2255 responses, it is, nevertheless, under the obligation to provide this Court with a complete discussion of the case law development on this issue in order to assist this Court in deciding the applicability of the time bar.

Since the amendment, courts have split on whether the new one-year limit should apply to post-AEDPA § 2255 petitions attacking convictions that became final before AEDPA, or whether a petitioner should be given a grace period to file a petition, notwithstanding the time bar. On one side, courts have strictly construed § 2255's new time limitation. *See United States v. Smith*, WL 324421 (E.D. Va. 1997)(there should be no grace period since it is not provided in statute); *Clarke*, 955 F.Supp. at 595 (petition filed on October 21, 1996, relating to a conviction that became final on May 27, 1990, was time barred); *Harold v. United States*, 932 F.Supp. 705 (D.Md. 1996) (petitioner's § 2255 petition was time barred since his underlying conviction was final in May, 1995, and his § 2255 petition was filed on August 2, 1996); *United States v. Bazemore*, 929 F.Supp. 1567 (S.D. Ga. 1996)(held June 20, 1996 petition was time barred since underlying conviction was "final" on May 1, 1995); *United States v. Thomas*, 1996 WL 583178 at 2 (E.D. Pa. 1996) (same) (unpublished); *Carrasquillo v. United States*, 1996 WL 480804 at 1 (E.D.N.Y. 1996)(same)(unpublished), *vacated on other grounds*, 1996 WL 608608 (E.D. Oct. 4, 1996).

The reasoning underlying the above holdings is that "[a] statute is effective upon the date of its enactment unless an express provision states otherwise." *Bradshaw v. Story*, 86 F.3d 164,

166 (10th Cir. 1996), *cert. denied*, 503 U.S. 966, 112 S.Ct. 1701 (1992). See *Felker v. Turpin*, 116 S.Ct. 2333 (1996)(held other AEDPA amendments applicable to petitions filed after effective date of AEDPA); *Ojo v. INS*, 106 F.3d 680, 681 n.3 (5th Cir. 1997)(recognizes April 24, 1996, as the effective date for AEDPA). Moreover, in enacting Section 2255 reforms, Congress carefully set forth four possible events from which the new one-year limitations period should be measured. "None of these four events includes the effective date of the AEDPA itself." *Clarke*, 955 F.Supp. at 597. Nor did Congress include within the new time limit provision a grace period entitling prisoners to file petitions that are otherwise time barred by the amendment. *Id.* ("[i]f Congress had intended to delay the enforcement of its reforms, Congress easily could have provided a grace period in this portion of the AEDPA; . . . [t]hat conspicuous absence should dissuade the judicial enactment of that which Congress did not enact"). "To create a 'grace period' in which prisoners can file untimely suits under Section 2255 despite the AEDPA's reforms is simply to resist Congress's efforts to 'curb the abuse of the statutory writ of habeas corpus. . .'" *Id.* (citing H.R. Conf. Rep. 104-518 (1996), reprinted in 1996 U.S.C.C.A.N. 944).

On the other side, consistent with DOJ's policy letter, courts have allowed either a one-year grace period or a reasonable period after the AEDPA's effective date in which to file a § 2255 motion. See *United States v. Simmonds*, 111 F.3d 737, 744-45 (10th Cir. 1997)(it would be "entirely unfair and a severe instance of retroactivity" to bar a § 2255 petition filed after the effective date of the amendment); *See Scire v. United States*, 1997 WL 138991 (E.D. N.Y. March 29, 1997)(unpublished) (petition filed 78 days after effective date of AEDPA not time barred since petitioner filed § 2255 claim within a "reasonable period of time"); *Smith v. United States*, 945 F.Supp. 1439, 1441 (D. Colo. 1996)(petition filed 57 days after effective date of

AEDPA attacking January 25, 1991 conviction was not time barred because "literal" and *per se* application of provision would be "intolerable"). Retroactivity concerns appear to underlie the decisions creating a grace period following the effective date of the AEDPA.

In *Landgraf v. USI Film Prods.*, the Supreme Court set forth the most recent and definitive discussion of the retroactive application of new statutory provisions. 511 U.S. 244, 114 S.Ct. 1483 (1994). It held that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." 114 S.Ct. at 1505. If the statute contains no express language, "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. The test is whether "the new provision attached new legal consequences to events completed before its enactment." *Id*. at 1499.

According to *Landgraf*, "[a] statute does not apply 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Id*. "When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id*. at 1501. Consequently, enactments changing procedural rules may often be applied in cases arising beforehand without raising concerns about retroactivity. *Id*. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id*. at 1502. *Accord St. Luis v. Texas Worker's Compensation Comm'n*, 65 F.3d 43, 46 (5th Cir. 1995)(amendment of Age Discrimination in Employment Act (ADEA) changing time limitation for bringing suit did

not have a retroactive effect according to *Landgraf* since "the change in the statute of limitations for filing ADEA claims . . . governs the secondary conduct of filing suit, not the primary conduct of the defendants); *Forest v. United States Postal Serv.*, 97 F.3d 137, 140 (6th Cir. 1996)("[a] statute of limitation does not relate to the conduct of a defendant, but instead relates to the plaintiff's conduct in filing the claim"); *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 889-91 (2nd Cir. 1995)(1991) amendment to statute of limitations under the ADEA should apply to claims filed after its enactment, including those in which the cause of action accrued beforehand).

The line of cases strictly applying § 2255's time limitation rely on *Landgraf's* separate treatment of changes in procedural rules affecting prospective relief and regulating secondary conduct, as opposed to, changes in substantive law affecting an existing right and regulating primary conduct. *See Clarke*, 955 F.Supp. at 597 (interpretation of *Landgraf* in *Texas Worker's* and *Forest* was persuasively analagous to issue whether the one-year time limitation in § 2255 should be given immediate effect: "[j]ust as the Courts of Appeals in *Texas Worker's* and *Forest* enforced the limitations period in effect when the lawsuit was filed, this Court agrees with the district courts in *Harold* and *Bazemore* that the one-year limitations period in Section 2255 should be applied to . . . motions filed after the effective date of the AEDPA").

The contrary position is that the application of § 2255's new time limitation would have retroactive effect to habeas causes of action that accrued prior to AEDPA. *Simmonds* and like cases do not apply *Landgraf's* distinction between changes affecting procedural and substantive rights. Instead, they hold that prior to § 2255's amendment, prisoners had the expectation that they could bring a § 2255 petition at any future date, and that such expectation is an "existing

right". *Simmonds*, 111 F.3d at 745 (the one-year time limitation attaches new legal consequences to a petitioner's expectation that he has the right to bring a future habeas corpus petition). *See Calderon v. U.S. Dist. Court for Central Dist. of Cal.*, 112 F.3d 386, 389 (9th Cir. 1997) (immediately applying Section 2254's parallel one-year time limitation provision "would impermissibly 'attach[] new legal consequences to events completed before its enactment'").

These cases rely on *Texaco, Inc. v. Short* (pre-*Landgraf*), in which the Supreme Court observed in a footnote that a new statute of limitations could not bar existing substantive rights without providing persons a reasonable time to commence a suit before the bar takes effect. 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 791 n. 21 (1982). *See Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996)(one year grace period should apply to time bar in 28 U.S.C. §§ 2254 and 2255 to afford petitioner reasonable time after amendment to file petition), *cert. granted*, 117 S.Ct. 726 (1997). *Texaco* addressed whether an amended state statute extinguished the appellant's property right without adequate notice. Unlike *Landgraf*, *Texaco* and the cases cited therein, did not address whether statutory changes in procedural rules has retroactive effect.

The Court of Appeals for the Fifth Circuit has not yet addressed the applicability of § 2255's new one-year limitation period. While the Fifth Circuit has held that AEDPA's amended standards of review applies to appeals pending as of the effective date of the act, *Carter v. Johnson*, 110 F.3d 1098, 1103 (5th Cir. 1997); it has refrained from imposing AEDPA's certificate of appealability restrictions on appeals filed <u>before</u> AEDPA's effective date. *United States v. Rocha*, 109 F.3d 225, 228 (5th Cir. 1997)(AEDPA's requirement of obtaining certificate of appealability does not apply to § 2255 appeals that were pending on amendment date since under *Landgraf* such application would effect the appellant's settled expectation that he already

satisfied the procedural requirements for filing notice of appeal). At least two other Courts of Appeals have also declined to apply AEDPA restrictions to Section 2254 or 2255 petitions filed before its effective date. *See United States v. Lopez*, 100 F.3d 113, 116-17 (10th Cir. 1996)(held Section 2255's time limitation had retroactive effect on a petition that was filed before the effective date of AEDPA); *Reyes v. Keanne*, 90 F.3d 676, 679 (2d Cir. 1996)(same).

In this case, the only issue is whether a Section 2255 petition filed after the effective date of AEDPA should be subjected to the one-year limitation. *See Clarke*, 955 F.Supp. at 596 n. 1. Molina filed his Section 2255 petition almost a year after the effective date of § 2255's time limitation, and eight years after his conviction became final. Under the Fifth Circuit's reasoning in *St. Louis*, and the position taken in *Clarke*, et. al., Molina's § 2255 petition should accordingly be time-barred. On the other hand, under *Simmonds, et. al.*, Molina should be given a reasonable time after ADEPA's enactment to file his Section 2255 petition. The question might still be asked whether Molina's waiting almost a year after the effective date of AEDPA to file his Section 2255 petition, is "a reasonable amount of time". Nonetheless, as the United States Attorney's Office is bound to follow DOJ's one-year grace period policy, the undersigned attorney will respond to Molina's claims on the merits.

8. For these reasons, Molina's motion to vacate sentence under 28 U.S.C. § 2255 shoudl be denied under Rule 8(a).

Respectfully submitted,

GAYNELLE GRIFFIN JONES
United States Attorney

PAULA C. OFFENHAUSER
Assistant United States Attorney
910 Travis, Suite 1500
P. O. Box 61129
Houston, Texas 77208-1129
(713) 567-9102

## CERTIFICATE OF SERVICE

I, Paula C. Offenhauser, Assistant United States Attorney, certify that a copy of this answer, motion to deny relief and supporting brief has been served by placing it in the United States mail, postage prepaid, on August 18, 1997, addressed to:

Mr. Felipe Molina-Uribe
Reg. No. 39209-079
USP Lompoc
3901 Klein Blvd.
Lompoc, CA 93936

PAULA C. OFFENHAUSER
Assistant United States Attorney