42

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FELIPE MOLINA-URIBE | * | |
| | * | |
| v. | * | CRIMINAL NO. B-87-01 |
| | * | CIVIL ACTION NO. B-97-097 |
| UNITED STATES OF AMERICA | * | |

<u>PROPOSED JOINT PRETRIAL ORDER</u>

1.    Appearance of Counsel:

2.    Statement of the Case.

On January 5, 1987, Petitioner, Felipe Molina-Uribe, was indicted in Count One, for conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§846, 841(a)(1) and 841(b)(1)(B); Count Two for possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B); Count Three for 1st Degree Murder in violation of 18 U.S.C. §§1114 and 1111: and Count Four for Use of a Firearm in Commission of a Crime of Violence in violation of 18 U.S.C. §924(c).

On April 13, 1987, at the start of the jury trial, Molina plead guilty to Counts One and Two. The jury trial resumed as to Counts Three and Four, ending on April 16, 1987, with guilty verdicts as to Counts Three (Murder) and Four (§ 924[c] Use of Firearm).

On May 13, 1987, the court imposed consecutive twenty-five year terms of imprisonment on Counts One and Two, a life sentence for the Count Three, to run concurrent with Counts One and Two,  and a consecutive sentence of five (5) years for Count Four.

A notice of appeal was filed with the court and appeal taken to the Fifth Circuit.  On August 24, 1988, the appellate court remanded the cause to the district court with instructions to strike the term of supervised release imposed as to Counts One, yet otherwise affirmed the convictions on Counts One, Three and Four, but reversed as to Count Two, and remanded with allowance for petitioner to plead anew as to Count Two.

On April 18, 1997, Molina filed a motion under 28 U.S.C. §2255 to set aside or correct his sentence. This motion is now being considered on the merits.

3.    Jurisdiction.

Jurisdiction is under 28 U.S.C. §2255.  Molina's original §2255 Motion is timely.  The grounds alleged in the original petition are yet subject to the "cause & prejudice" determination discussed herein.  Additionally, there are unresolved jurisdictional issues before the court relating to Molina's attempt to bring additional grounds of relief.   His attempt to amend his motion to include additional grounds is untimely.  As such, the Court is without jurisdiction to entertain such additional grounds.

4.    Motions.

Petitioner desires to supplement the grounds for relief as requested in the attached motion.  Petitioner desires to file a brief in support of the writ of habeas corpus.

5.    Contentions of the Parties.

## CONTENTIONS OF PETITIONER

a.    Ineffective Assistance of counsel, as alleged in his original timely motion:

1.    Counsel failed to allow Molina to testify in his own defense.

2.    Counsel failed to investigate and interview witnesses.

3.    Failed to obtain an independent expert to analyze blood of Molina to determine the presence of THC or "downers".

4.    Counsel failed to present to the jury Molina's "theory of defense".

5.    Counsel failed to bring before the jury Molina's state of mind.

6.    Counsel failed to request a jury instruction on self defense or manslaughter.

7.    Counsel failed to preserve these issues and raise them on direct appeal.

2

b.  Molina seeks to untimely supplement his original timely motion with the following allegations:

1.  The performance of trial counsel deprived defendant of the right to effective assistance by failing to render adequate legal assistance. That is, counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. This performance was inadequate in the following particulars;

2.  The voir dire examination, conducted by the judge, failed to inquire about or explain to the jury any element of the offenses charged or of any potential defense. Trial counsel neither requested the opportunity for the lawyers to conduct voir dire nor offered proposed questions to the trial judge to resolve this matter;

3.  Trial counsel failed to give an opening statement before the beginning of the government's case.

4.  Trial counsel failed to cross-examine government witnesses. Examination was waived on ten out of twelve witnesses. The final two government witnesses were briefly cross-examined. Two witnesses were later recalled by the defense.

5.  Opening statement, when given, presented a theory with no support either in the evidence or in the investigation conducted by the defense.

6.  Cross and direct examination was ineffective because it purported to advance a theory with no basis in fact.

7.  Final argument of counsel advanced a theory with no basis in fact and the two counsel advanced conflicting theories.

8.  Taken together, these errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. That is, Mr. Molina had genuine defenses under the evidence arising from the events that were never adequately presented to the jury.

9.   Strategic choices must be relevant to "plausible options." The theory of defense of murder by fellow DEA officers was not a plausible option under standards of *Strickland v. Washington*.

10.  Setting aside the issue of whether counsel was effective under *Strickland*, the defendant failed to receive a fair trial as required by the Due Process Clauses and through the several provisions of the Sixth Amendment, including the Counsel Clause. The trial afforded Mr. Molina did not adequately explore the issue of his mental state at the time of the incident in which an officer was killed. Differently put, the definition of a fair trial as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding" is not met because no tribunal has yet tested the issue of whether the shooting of the agent was intentional or in the heat of passion or in self defense. This failure resulted from a voir dire that did not review the elements of the offense with prospective jurors followed by a solid block of government argument and testimony, uninterrupted by any defense. Defendant would urge that without regard to abilities or intention of counsel at the time of trial, the trial was not fair in the sense that it cannot be relied on as having produced a just result. Defendant urges that the underlying trial must be considered to answer the issue of "fair trial" rather than merely conduct of counsel.

11.  The Constitution, Art. 1, Section 9, Clause 2 prohibits the suspension of the privilege of the Writ of Habeas Corpus, except in cases of rebellion or invasion. This provision, in itself, creates a right to relief.

12.  The inherent powers of the judiciary under Article 3 of the constitution grant the right to relief.

13.  Molina is a citizen of Mexico and accordingly protected by certain international treaties and declarations. Habeas relief should be granted to Mr. Molina under international treaty law, both as enacted and under the law of nations. Treaty law is applicable in three ways. First, Article VI, clause 2, the Supremacy Clause declares that all treaties made are the supreme law of the land. Second, customary international law

4

and Jus *Cogens* norms are binding law in the United States. Third, international law provides guidance in the interpretation of U.S. law. Defendant urges the treaties discussed below are self-enacting or, alternatively, binding as customary international law or provide the proper basis for the interpretation of domestic law.

14.    The inalienable rights of man provide a basis for relief. This right was described in the Declaration of Independence and pre-existed any enumeration of rights in the Constitution or the Bill of Rights.

15.    Mr. Molina is a changed person from the one who was convicted some fourteen years ago. He has enjoyed a religious conversion. Continued punishment of this person, now much changed from the one who committed the acts in issue is a violation of Due Process under the Sixth Amendment and constitutes cruel and unusual punishment under the Eighth Amendment.

## CONTENTIONS OF THE GOVERNMENT

a.    Defendant's original motion, filed April 30, 1997, is timely. Defendant's desired amendments to the original motion should be denied because, not having been raised before, they are not timely under the AEDPA. Although ordinarily, under FED. R. CIV. PROC. 15(a), amendments of habeas claims may be "freely given when justice so requires". A different situation arises when the amendments are filed after the AEDPA's statute of limitations has run. *United States v. Espinoza-Saenz*, 235 F.3d 501, 503–504 (10th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999). Permitting claims to be filed following the expiration of the statute of limitations would "frustrate the intent of Congress" and amount to "judicial rescission" of the limitations period. *Id.* Although "clarification" of timely filed claims may be permitted to be filed by the court following the running of the limitations period, new issues do not enjoy "relation back" treatment. *Id., United States v. Lampton*, 2001 WL 263094 (E.D. La. Mar 14, 2001)(NO. CR. A. 96-125)(discussion regarding "relation back").The Court is without jurisdiction to entertain Molina's late filed claims.

b.    Petitioner fails to overcome his burden of "cause" and "actual prejudice" by failing to demonstrate 'cause' for failing to bring his complaints on direct appeal and resultant 'actual prejudice'.

c.   If the merits of the petitioner's claims are reached, petitioner would be entitled to relief only on the grounds that trial counsel violated the standards of *Strickland v. Washington*,   "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984). To succeed on such a claim, Molina must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume the counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Strickland,* 466 U.S. at 690. Second, he must show that he was prejudiced by counsel's ineffective assistance. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different".... i.e., that absent the errors, the fact finder would have had a reasonable doubt respecting guilt". *Strickland,* 466 U.S. at 694-95, 104 S.Ct. 2052, 2068. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 843-44 (1993). The burden of proving an ineffective assistance of counsel claim rests with the petitioner. Molina challenges his counsel's effectiveness only as to the murder charges; he does not claim that his guilty pleas are involuntary based on ineffective assistance.

d.   Timely allegations from original motion:

1.   Right to testify.

Molina first claims that he was denied his right to testify on his own behalf, a claim that was not raised on direct appeal. He claims that "the court would not allow him to because he (trial counsel) had not included Molina's name on the witness list and had not claimed an alibi defense whatever that meant." (*Motion* at 9-10). Molina, however, does not direct this court to that portion of the record where this allegedly occurred and there is no such reference on the docket sheet.

6

Molina's statement is highly questionable as Molina appears to be referencing Fed. R.Crim. P. 12.1, which requires a defendant to serve notice of his intent to present an alibi defense. The testimony that Molina alleges he wanted to give does not rise to the level of an alibi defense. Rather, he claims that once the government witnesses began giving their version of the offense, he realized their testimony left out critical facts and was false. (*Motion* at 10). He wanted the jury to hear his version -- that no one told him Agent Ramos or Ortiz were federal agents (admitting, however, that someone mentioned they were cops); that the CI's could not have seen what was happening in the car because the trunk was up and they were to the rear of the vehicle; that when the struggle occurred, both Ortiz and Rodriguez were in the car; and, that he believed he was in a death struggle with three drug dealers.

Whether a district court has a *sua sponte* duty to conduct a colloquy with the defendant to determine whether his decision not to testify is knowing and voluntary, and the extent to which a waiver of the right to testify may be inferred, are issues which this circuit has not decided.[1] *See United States v. Ortiz*, 82 F.3d 1066, 1071 (D.C.Cir. 1996)(rejecting any *per se* requirement that the district court inquire directly of the defendant). A record completely silent on the issue, however, does not automatically command an evidentiary hearing. *Id.* At least three judges in the Fifth Circuit have taken the position that where the record is silent with regard to a defendant's desire to testify, it is appropriate to presume in a habeas proceeding that "the defendant acquiesced in his counsel's advice or otherwise made a voluntary choice not to testify." *Jordan v. Hargett*, 34 F.3d 310,

---

[1]Molina did not raise this issue on appeal and therefore must demonstrate cause and prejudice for failing to do so. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). The cause and prejudice standard is significantly more rigorous than even the plain error standard applied on direct appeal. *Id.* at 589. The "cause" standard requires a showing that "`some objective factor external to the defense'" prevented the defendant from raising on direct appeal the claim advanced in the § 2255 proceeding. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). To establish the requisite degree of prejudice to remedy his procedural default, Molina must demonstrate that any alleged error resulted in an "actual and substantial disadvantage" that infected his criminal proceedings "with error of constitutional dimensions." *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1992) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1992)). Molina has failed to allege facts which support a finding of either cause or prejudice to remedy his procedural default in failing to raise his claim that he was denied his right to testify on direct appeal.

7

\

315 (5th Cir. 1994)(*Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994), *en banc review granted and panel decision vacated*, 42 F.3d 1483 (5th Cir. 1994), *case remanded*, 53 F.3d 94 (5th Cir. 1995) (deferring consideration of any constitutional issue of scope of right to testify, waiver of right to testify, failure to object, harmless error pending factual determination in district court; vacating panel decision and remanded for evidentiary determination once counsel was located).

While the Fifth Circuit has not yet addressed this issue, or what kind of threshold showing is necessary to entitle a defendant to an evidentiary hearing on the issue, the Seventh Circuit has required more than a defendant's unsubstantiated and "barebones" assertions on the issue:

> There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify."

> We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary -- and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify--to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim. The analogy is to the heightened pleading and substantiation required in certain civil rights cases. *Strauss v. City of Chicago*, 760 F.2d 765, 767-68 (7th Cir. 1985); *Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir. 1988); *Elliott v. Thomas*, 937 F.2d 1382, 1383-84 (9th Cir. 1991).

8

... The defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self–serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

Molina's self–serving account of his attorneys' statements to him are insufficient to entitle him to an evidentiary hearing. His claims that he did not voluntarily waive his right to testify, and that he informed his counsel that he wanted to testify and that he made repeated attempts to convince them it was in his best interest to testify, are wholly unsubstantiated. So are his claims that he acquiesced to counsels' decision that he not testify because his counsel threatened to withdraw if he insisted on asserting his right. ("The closest thing to a waiver would be Molina's silence once the attorneys had threatened to withdraw from the case and to let him continue on his own.")

2.    Failure to investigate, interview witnesses, present defenses.

Molina also claims that counsel **failed to investigate** or interview witnesses. His defense was that four people (Agent Ramos, CI Ortiz, CI Rodriguez, and Molina) were struggling between themselves for the revolver (*Motion* at 18), and that he was trying to push the gun away from his head (*Motion* at 10–11) when the gun discharged. In particular, he claims that counsel failed to have conducted an independent examination of the fingerprint testing done on the revolver (*Motion* at 19).    Even assuming an omission on the part of counsel, Molina cannot demonstrate the requisite prejudice inasmuch as the results of such tests would have been of minimal, if any, evidentiary value.  It was not disputed that the revolver belonged to Agent Alvarez and had been placed in the side pocket of the undercover vehicle.    According to Molina, the forensic evidence showed his fingerprints were not on the revolver. (*Motion* at 24).   However, there was no dispute of the struggle between Agent Ramos and Molina over the revolver or of the fact that the weapon was discharged during that struggle. The gun fired more than once. The first shot hit Rodriguez in the hand and he backed away from the car. Two more shots were fired during the struggle, one of which hit Molina in the leg.  Ortiz admonished Molina to release the gun and told him again that Agent Ramos was a federal agent.  Further, the jury, *in fact*, was presented with the testimony of Ortiz that during the struggle Molina had stated to him in Spanish that he thought Agent Ramos and Ortiz were trying to steal the marihuana and to hurt him.  It was after this that Molina forced the gun downward to Ramos' chest and fired the fourth shot mortally wounding him.  Thus, the issue was one of

9

credibility -- whether the jury believe Ortiz' testimony that he and Ramos had informed Molina of the fact that they were federal agents and whether the jury believed the government's theory that Molina had intentionally killed Ramos rather than accidentally killed him in self-defense or by mistake of fact.

Molina claims that counsel **failed to interview witnesses** and investigation the background of two paid confidential informants, or Agent Ramos, who had a history of robbing drug dealer. His claim of uncalled witnesses is wholly conclusory. While he claims there exists "some evidence" of such a history, Molina does not identify what that evidence is or backup his claim with any facts. His statements are thus wholly conclusory and insufficient to state a cognizable claim. Moreover, the record reflects that counsel in fact filed numerous pretrial motions seeking exculpatory evidence and witness statements. Assuming, *arguendo*, that counsel failed to interview FBI Agent Gonzales, Molina presents nothing to demonstrate that the agent would have consented to the interview and in fact would have testified as Molina contends. Nor can he demonstrate that such omission would render the results of his trial fundamentally unfair. Whether CI [Rodriguez-]Ramirez told Agent Gonzales that no one in his presence told Molina he was under arrest or that they were federal agents, does not undermine Ortiz' testimony that he (Ortiz) told Molina that Agent Ramos was a federal agent and that Ramos replied in return, "I already told him he was arrested. . . ." *Id.*, at 1195. Further, the trial testimony was that Rodriguez could not testify as to Ortiz' statements because he did not hear them and was only paying attention to what he was doing at the time (*i.e.*, leaning through the car door, grabbing Molina's leg and getting shot in the hand). *Id.*, at 1195 n. 2.

3.    Failed to obtain independent analysis of petitioner's blood

As to Molina's claim that counsel failed to independently analyze his blood samples, counsel raised the specter of an intoxication defense at trial by introducing evidence that Molina had smoked marihuana and his statements that he had some "ionamines and pasadrenes" (which the Fifth Circuit found referenced a previous event and not one that had occurred on that day). Counsel requested an intoxication defense instruction. As the Fifth Circuit found, voluntary intoxication does not constitute an affirmative defense in this circuit but may be considered by the jury as a factor negating intent. *Id.*, at 1205. This instruction was denied by the district court with the finding that there was no evidence to support any claim of intoxication by Molina to any degree. The Fifth Circuit agreed and found that the record evidence, to the contrary, was "strong, amply sufficient, consistent, completely credible and clearly establishe[d] that Molina was not intoxicated." *Id.*, at 1206-07. The evidence was that Molina's use of marihuana on the day of the murder was minimal, at best, and the testimony based upon

observation of him was that he was clearly coherent and in control at all times. Given this evidence, Molina's argument that additional drug testing would have disclosed evidence of drug intoxication sufficient to demonstrate an impaired mental state is wholly unrealistic and self–serving.   In light of this, and the fact that the government's toxicology testing produced too low a level of alcohol content for him to even be considered under the influence, counsel pursued the better trial strategy.  This was to argue that the combination of the alcohol and marihuana produced a higher intoxicating effect that either substance alone. Counsel, in fact, called the FBI chemist for this very purpose.  *Id.*, at 1207. Prevailing standards of review require this court valuate counsel's decision not to pursue a particular line of investigation must be assessed for reasonableness of all the circumstances and to apply a heavy measure of deference to counsel's judgment. *Westley v. Johnson*, 83 F.3d 714, 719 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 773 (1997).  Under this standard, Molina's claim does not rise to the level of a Sixth Amendment violation.

      4.    Failed to present his theory of case, state of mind, request jury instructions on self defense or manslaughter

Molina claims that his trial counsel failed to present his **theory of the case**; that is, that he acted in self–defense. As set out in the opinion of the Fifth Circuit, Molina's defense stated during opening argument was that he was the victim of a conspiracy and that Ramos' death was an assassination by DEA agents (Tr. 890– 905). *Molina–Uribe*, 853 F.2d at 1200. During closing argument defense counsel also argued that Molina believed he was being attacked by dangerous drug dealers, that he fought back in self–defense after being shot with the first fire, and that he had no malice aforethought when the gun discharged as he was fighting for it.  He also argued that if the jury believed Ortiz, then Molina was acting out of sudden passion and did not have the requisite intent to commit premeditated murder (Tr. 881–86).  *Id.* Thus, contrary to Molina's argument almost ten years later, counsel in fact presented the very defense that he claims should have been presented.  The theory of the case used by trial counsel was consistent with the informed wishes of the petitioner, now complained of by petitioner, and was purely a tactical decision. The Fifth Circuit has consistently held that counsel will not be constitutionally deficient merely because of tactical decisions. *United States v. Guerra*, 628 F.2d 410 (5th Cir. 1980), *cert.denied* , 450 U.S. 934.

Petitioner alleges that counsel's errors relating to his failure to expose the jury to **Petitioner's mental state** at the time of the crime left the government's prosecution untested and deprived Petitioner of a fair trial.  "If trial counsel's representation was so inadequate that it entirely failed to subject the prosecution's case to meaningful adversarial testing; and therefore, pursuant to *United States v.*

*Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984), constituted a denial of [petitioner's] Sixth Amendment rights, without the necessity of showing prejudice". *Jones v. Jones*, 163 F.3d 285, 295 (5ᵗʰ Cir. 1998).

Contrary to Molina's claims, counsel developed evidence in support of "self defense" and suggesting the defendant's actions occurred in the "heat of passion". Further, contrary to what Molina claims (*Motion* at 22), trial counsel in fact had requested instructions on a **voluntary manslaughter**, sudden passion, self-defense, **self-defense**, apparent danger, and converse of self-defense (Defendant's requested jury instruction no. 1), intoxication (Defendant's requested jury instruction no. 3), assault one a federal officer (*i.e.,* "whether the Defendant knew the victim to be a Federal officer and only acted as he did because of a reasonable, good faith belief that he needed to defend himself against an assault by a private citizen). Unfortunately for Molina the government's evidence at trial refuted this defense and the jury rejected it.   As to his claim that the record demonstrated no "malice aforethought," this is a sufficiency issue that was raised on direct appeal and rejected. *Molina–Uribe*, 853 F.2d 1207. Molina is not entitled to relitigate it on collateral attack. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1996); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977 (1986).

Although an alternate defense to the "agency conspiracy" defense was presented, alternate, even inconsistent, defenses are permitted in criminal law. "Indeed, the most successful criminal attorneys are often those who can create a reasonable doubt in the jurors' minds by throwing up one or two or more plausible alternatives to the defendant's guilt". *Moore v. Johnson,* 194 F.3d 586, 611 (5ᵗʰ Cir. 1999); *Turner v. Johnson*, 106 F.3d 1178, 1187 (5ᵗʰ Cir. 1997)(broad defense offered several possibilities).

5.    Failed to preserve and bring above allegations on direct appeal

Molina's above allegations are of "ineffective assistance of counsel" at trial. As the trial record is typically insufficiently developed to permit review of such claims on direct appeal, it would not be "ineffective assistance" of appellate counsel to fail to bring such claims on direct appeal, especially when appellate counsel also served as trial counsel. *United States v. Lampazianie*, 251 F.3d 519, 527 (5ᵗʰ Cir. 2001), *United States v. Scott*, 159 F.3d 916, 924 (5ᵗʰ Cir. 1998).

e.    Untimely allegations:

1.    Voir Dire

12

Counsel's 'failure' to request individual voir dire in order to "explain" to the jury venire the elements of the offense and potential defenses did not represent "ineffective assistance". The district court has broad discretion in voir diring the venire panel. *United States v. Shannon*, 21 F.3d 77, 82 (5th Cir. 1994).

### 2.   Opening statement

Petitioner complains that counsel was deficient in "failing to give an opening statement". Petitioner fails to demonstrate how he was prejudiced by such "failure". The decision to waive an Opening Statement falls within the zone of "trial strategy" and does not, in itself, indicate deficient performance by counsel. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). Waiving Opening Statement may be motivated by a "reasonable tactical objective". *United States v. Stedman*, 66 F.3d 737, 740 (5th Cir. 1995). It may reflect a "strategic choice". *Gilliard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir. 1988).

### 3.   Cross examination

Petitioner claims that counsel was deficient in failing to cross- examine government witnesses. Petitioner does not explain specifically how he suffered actual prejudice therefrom. *Berryman v. Morton*, 100 F.3d 1089, 1102 (3rd Cir. 1996). Petitioner does not suggest the specific evidence which was left unpresented or the manner in which such witnesses were susceptible to impeachment. *Pickins v. Gibson*, 206 F.3d 988, 1002 (10th Cir. 2000). Following their direct examination, Counsel deferred cross-examination of several government witnesses. Some of those witnesses were never cross-examined. The decision on whether to cross-examine witnesses must be reviewed in the context of the nature of the evidence and strength of the government's case. *Murray v. Maggio*, 736 F.2d at 283.

### 4.   Inherent rights of man

Despite petitioner's urging to the contrary, the government can find no basis for relief under international law or treaty, or under the inherent rights of man. The inherent power of the court, by definition, exists where statutory authority is absent. "Actual innocence" provides relief under 28 U.S.C. §§2241 and §2255.

### 5.   Post conviction rehabilitation

Continued incarceration of a guilty but religious and rehabilitated prisoner does not constitute a violation of due process or cruel and unusual punishment. *Graham v. Johnson*, 168 F.3d 762, 787 (5th Cir. 1999)(continued incarceration of

innocent person not violation of due process or cruel and unusual punishment). Court's power to acquit convicted defendant limited to instances when court has subject matter and personal jurisdiction of the case. *Carlisle v. United States*, 517 U.S. 416, 443, 116 S.Ct 1460, 1474 (1996); *Irwin v. Wolfe*, 529 F.2d 1119, 1123 (8th Cir. 1976)(incarceration of rehabilitated convict does not offend Eight Amendment); *Fielding v. LeFevre*, 548 F2d 1102, 1108 (2nd Cir. 1977)(rehabilitation not sole goal of sentencing); *Smith v. Nelson*, 1997 WL 441309 (N.D.Ill)(re-sentencing of rehabilitated prisoner to 45 years imprisonment did not offend due process or the Eighth Amendment).

6.    Admissions of Fact

      Regarding the incident:

      a.    On the afternoon of December 31, 1986, in McAllen, Texas, Molina and co-defendant Jesus Garcia-Nieto were in possession of over three hundred (300) pounds of marihuana and looking for a buyer.

      b.    Arrangements were made by a paid DEA informant, Roberto Ortiz, for a meeting between Molina, DEA informant Ernesto Rodriguez Ramirez and DEA agent William Ramos (acting in an undercover capacity) in the parking lot of the Valley Mart in Pharr, Texas.

      c.    Agent Ramos and the two informants arrived at the supermarket parking lot. The two informants walked to the vehicle containing Molina (Ford Bronco) and advised Molina that the person with the money was there. Molina, in the company of the two informants approached the agent's vehicle. CI Rodriguez entered the car and sat behind the driver's seat, where the agent was seated. CI Ortiz sat in the passenger side of the front seat. Molina sat in the back seat on the passenger side.

      d.    The agent was introduced to Molina, as the person with the money. Molina was introduced as the person with the marihuana. Molina advised he had three hundred fifty (350) pounds of marihuana readily available, although an additional three thousand (3,000) pounds were available on the Mexican side. The agent asked if the purchase could take place there at the store (their present location). Molina preferred to do the "deal" at Molina's house, yet relented after the agent showed Molina the purchase money of $60,000.00 in cash. Molina left the agent's car to retrieve a sample of marihuana from the Bronco.

14

e.    Molina and the CI(s) then left the location in order to consult with others, including Jesus Garcia, to determine if the "deal" could be done there at the store. The CI(s) advised that Molina's house was not acceptable. Garcia and Molina rejected the CI's suggestion that the deal occur at CI Ortiz' apartment. Ultimately, Junior's Supermarket in Las Milpas, Texas, was agreed upon.

f.    CI Ortiz received a phone call from Molina an hour later, confirming that Molina would arrive at Junior's with the "merchandise" and the agent would arrive with the money to make the exchange.

g.    Shortly after 7:00 PM, the agent, along with the two CI(s), arrived at Junior's. Although it was otherwise dark outside, the parking lot was lit by a few lights. The agent ultimately parked near a light post in the busy parking lot.

h.    In the vicinity were a number of surveilling DEA agents who were to assist in the arrest of Mr. Molina.

i.    Molina arrived shortly thereafter in a van. The CI(s) approached Molina's van and verified Molina had brought the marihuana. The CI(s) then walked with Molina to the agent's car. After being advised that the marihuana was present, the agent gave CI Ortiz the car keys to enable Ortiz to ostensibly retrieve the money from the trunk. Although the agent directed that Molina sit in the front passenger seat, Molina entered the back seat and sat in the center of the back seat.

j.    With both CI(s) outside and at the rear of the car, CI Ortiz opened the trunk (the arrest signal). Ortiz then lowered the trunk hood slightly to enable him to see into the car through the rear window.

k.    As the arrest signal was given, the agent identified himself as a Federal agent, drew his gun, pointed it at Molina and advised him that he was under arrest.

l.    CI Ortiz noticed that the agent had his gun drawn and was pointing it at Molina. Molina then grabbed for the gun and for the agent's neck and pulled the agent toward the back seat, as the agent was heard calling for help.

15

m.    Molina pulled the agent into the back seat. Molina was laying prone on the back seat, with his head toward the driver's side. The agent was atop Molina in a semi-seated position, with one leg stuck between the front seats and the other in the back seat toward the driver's side. Molina and the agent were fighting over the agent's gun. Molina had one of his hands on the pistol and had pulled it toward his waist. The agent still had a hand on the pistol.

n.    As CI Ortiz entered the vehicle, he grabbed Molina's right hand and pressed it toward the rear of the vehicle, and advised Molina that "we were Federal agents, that he should let go of what he had in his hand". The gun then went off. This shot apparently struck CI Rodriguez in the hand, as he stood just outside the passenger side door. CI Ortiz again directed Molina to let go, that Ramos was a Federal agent. Ramos then advised that "I already told him that he is arrested and he doesn't want to pay attention". Two more shots were fired. One of these shots apparently struck Molina in the leg. CI Ortiz again directed Molina to let go of the gun, to which Molina replied, "They want to fuck me". CI Ortiz advised Molina, "Nobody is going to screw you. We are Federal agents".

o.    As Molina and Ramos continued to struggle for the gun, the CI noticed that Molina had the gun in his left hand, with the agent holding onto Molina's left wrist, trying to push the gun away from Ramos toward the driver's side, but not pointing toward Molina. Conversely, Molina was forcing the gun to point toward the agent and CI Ortiz. Ultimately Molina was able to overcome the agent's resistance and force the gun downward toward the agent. Then Molina fired again. This time the bullet struck the agent in the chest. The agent slumped towards CI Ortiz.

p.    Almost immediately DEA agents entered the car. One agent pointed a gun at Molina's head and ordered him to drop the gun. Another agent entered the car and took the pistol away from Molina.

q.    Agent Ramos was rushed to a nearby hospital where he died from the gunshot wound to the chest.

Regarding pre-trial and trial proceedings:

a.    Counsel involved were two attorneys licensed in the State of Texas and the United States District Courts, Southern District of Texas, J.M.

16

Ramirez, Southern District of Texas I.D. No. 1218, and Joseph A. Connors, 1111, Southern District of Texas I.D. No. 3799.

b.     The trial began April 13, 1987. Mr. Molina pled guilty to counts 1 and 2 before trial began. On April 16,1987, the jury returned verdicts of guilty on Counts 3 and 4.

c.     On May 13, 1987, the District Court imposed a term of twenty-five years to run consecutive to each other on counts 1 and 2 and a life sentence to be served concurrently with those sentences on count 3. The Court imposed a five-year sentence on Count 4 to be served consecutively to the other sentences.

d.     An appeal was taken to the Fifth Circuit and on August 24, 1988 Count 2 was reversed and remanded.

e.     The original motion was filed on April 18, 1997. After an appeal based on jurisdictional questions, this motion is now properly before this Court.

## Regarding Performance of Counsel:

a.     Counsel moved for individual voir dire, which was denied.

b.     The district court voir dired the panel as to the scienter necessary for murder, which included, "unlawfully, willfully, deliberately, maliciously, with premeditation and malice aforethought".

c.     The district court voir dired the jury on the presumption of innocence and whether the panel would follow the court's instructions regarding the law.

d.     Defense counsel voir dired the jury on "self defense" as a complete defense.

e.     Defense counsel developed evidence in support of "self defense" and accidental discharge of the weapon.

f.     Defense counsel requested jury instructions relating to "self-defense", "sudden passion", "intoxication", "accident", the lesser included charge for "voluntary manslaughter" and "simple assult".

7.   Contested issues of fact.

    a.   Whether performance of trial counsel was under all circumstances unreasonable under the prevailing norms.

    b.   Whether, but for counsel's unprofessional errors, the result of the trial would have been different.

The parties dispute that the following issues of fact must be decided under the law:

    c.   Whether Felipe Molina received a fair trial.

    d.   Whether Felipe Molina is innocent.

8.   Agreed propositions of law.

Assuming Petitioner survives the jurisdictional hurdle of "cause and actual prejudice", Petitioner would be entitled to a new trial on the murder conviction upon meeting the standards of *Strickland v., Washington*, 466 U.S. 668 (1984). That is, should receive a new trial upon showing his trial attorneys' performance was "under all circumstances unreasonable under the prevailing norms"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

9.   Contested propositions of law.

    a.   Whether Defendant's desired supplement to his original motion should be denied because they are not timely under the AEDPA.

    b.   Whether Petitioner has demonstrated the requisite "cause and actual prejudice" to bring this petition.

    c.   Whether strategic choices by trial counsel, if not within the ambit of "plausible options" may be a basis for finding ineffective assistance of counsel under standards of *Strickland v. Washington*.

    d.   Whether Due Process requires a fair trial, apart from issues of effectiveness of counsel.

    e.   Whether the United States Constitution, Art. 1, Section 9, Clause 2 prohibiting the suspension of the privilege of the Writ of Habeas

18

Corpus, except in cases of rebellion or invasion requires granting liberty to an innocent person.

f.    Whether the inherent powers of the judiciary under Article 3 of the United States Constitution requires granting liberty to an innocent person.

g.    Whether the inalienable rights of man require granting liberty to an innocent person.

h.    Whether international law requires granting liberty to an innocent person.

10.    Exhibits.

Parties may reference the 5th Circuit opinion of the direct appeal (*U.S. v. Molina–Uribe*, 853 F.2d 1193 [5[th] Cir. 1988]) and the trial transcript.

11.    Witnesses.

Felipe Molina–Uribe

Petitioner in this cause.

J.M. Ramirez
Attorney at Law
111 N. 10th Street
Edinburg, TX
(956)383–4131

Mr. Ramirez is trial counsel in this case and will testify about the preparation and conduct of the trial.

Joseph Connors
Attorney at Law
605 E. Violet Avenue
McAllen, TX 78501
(956)687–8217

Mr. Connors is trial counsel in this case and will testify about the preparation and conduct of the trial.

Chris Milner
3710 Rawlins, # 1440.
Dallas, Texas 75219
(214) 526-3311

Mr. Milner was government trial counsel in this case and will testify about the preparation and conduct of the trial.

Jack Wolfe
4106 N. 23rd
McAllen, Texas 78501
(956) 686-1737

Mr. Wolfe was government trial counsel in this case and will testify about the preparation and conduct of the trial.

Sheldon Wisefeld
855 E. Harrison
Brownsville, Texas, 78520

Mr. Wisefeld is being called as an expert witness regarding issues of fact and law described above. His curriculum vitae is attached.

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

12.    Settlement.

The parties have communicated; there is no likelihood of settlement.

13.  Evidentiary Hearing.

   a.   The probable length of the hearing on the writ is two days.

   b.   Excepting the petitioner, all of the witnesses are lawyers.  Each is within
        the state.


Date: _____

                                _____
                                HON. JOHN W. BLACK
                                United States Magistrate Judge

                                Approved: _____

Date:  10/9/2002                Paul G. Hajjar
                                Attorney in Charge, petitioner

Date: 10/9/02                   Mark M. Dowd
                                Attorney in Charge, government.

21