United States District Court
Southern District of Texas
FILED

DEC 0 2 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FELIPE MOLINA-URIBE | § | |
| | § | |
| V. | § | CR. NO. B-87-01 |
| | § | CA. NO. B-97-097 |
| UNITED STATES OF AMERICA | § | |

POST HEARING BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Petitioner, Felipe Molina, by and through his attorney of record, Assistant Federal Public Defender Paul G. Hajjar, and files his Post hearing brief. This matter was heard before the Honorable John William Black, Magistrate Judge on October 17 and 18 and at the conclusion of the hearing Petitioner was granted leave to file a brief in lieu of a final argument.

At this juncture the Court is very familiar with the procedural and factual background that are in large part undisputed. The controlling law is the seminal Supreme Court Case of Strickland v. Washington 104 S.Ct 2052 (1984) that sets up the stringent requirement a Petitioner must show to prevail on a 28 USC §2255 proceedings.

Petitioner contends that he has met his burden in showing that his Counsel's performance from January 1987 until April 16, 1987 has fallen below an objective standard of reasonableness and that such "ineffective assistance" has denied him his Sixth Amendment right to "reasonably effective assistance of counsel....." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Defendant has shown that (1) his attorney's performance was, under all circumstances, unreasonable under the prevailing norms, Id. at 687-97, 104 S. Ct. at 2064-66, and that (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. Petitioner reminds the

Court that he is not required to show that a different result "would be more likely than not." McFadden v. Cabana, 851 F. 2d 784, 787 (5th Cir. 1988). A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Strickland at 694, 104 S. Ct. at 2068.

Petitioner prays the Court to consider the following as established:

1. On March 2, 1987, the case was set for final pretrial conference before the Honorable Filemon B. Vela, United States District Judge. At that time, defense counsel announced not ready. Defense counsel, J.M. Ramirez initially argued that the superseding indictment entitled him to a new trial date, however, later conceded that the new indictment did not contain any new changes and agreed to waive petitioner's speedy trial rights in exchange for a thirty (30) day continuance at that time Mr. J.M. Ramirez requested and obtained the appointment of additional counsel. TR 1-10. Neither before March 2, 1987 nor after did Mr. Ramirez employ or attempt to employ the services of a ballistic expert, medical expert or accident reconstruction expert that could lend credence to his theory of defense. Such theory needed at least the possibility of more than four bullets fired, more than one gun discharged, more than one bullet penetrating the body of the victim and different configuration of the protagonist in the back seat of the vehicle where the killing occurred on December 31, 1986.

2. At the evidentiary hearing, contrary to the testimony of Mr. Ramirez (EH. I, 97-98) there were no three or four defenses presented to the Jury.

    Q. Now, do you recall what was your defense in that case?

    A. We had many. Most of them reflected by Mr. Molina-Uribe, and there primarily three or four.

2

Q. Okay. Would you tell us?

A. Number one, he didn't do it.

Q. Okay.

A. Number two, the gun discharged by itself; he had nothing to do with it. The other one discharged accidentally while he was peripherally involved in it. The other one, he did it.

Q. And all these defenses were presented as part of your defense to the jury?

A. <u>Absolutely</u>. [emphasis added] Including the ones he raised himself, that he didn't know what they were talking about.

Q. Do you recall a defense that was presented where the DEA agents would be executing their own colleague?

A. Yes.

Q. Was this also presented by Mr. Molina, himself?

A. I have a feeling Mr. Molina had no idea which way wind was blowing regarding Agent Ramos.

At the evidentiary hearing Mr. Ramirez clearly misrepresented the fact that he chose to present only one theory of defense. Mr. Connors clearly summarized his lead counsel strategy (E.H. II, 6), "Mr. Ramirez had one defense in the entire time he was the lawyer .... and he rode that horse."

3. The government has asserted that many defenses were presented in the alternative. A simple review of the record clearly shows there was but one defense presented by trial counsel: "A conspiracy to execute their colleague by the D. E. A. agents"

The alternative theories of self defense and accident appear in the record because they are undisputable facts, the instructions were included and Mr. Connor's argued them to the Jury in his portion of the final argument. Nowhere in the record does defense counsel develop either of the alternative defenses of "self defense, accident or heat of passion." In fact when a government's witness clearly uttered the most favorable evidence for Molina, "he didn't want to do that thing, and that the gun went off by itself." TR 801 Defense counsel Ramirez rushed in to suppress that potential defense b explaining that Molina could have meant the drug deal and not the shooting. Clearly Mr. Ramirez was more worried about supporting his unbelievable theory of defense than defending his client from a charge that carried a minimum sentence of life in prison.

The record is clear there were no defensive theories raised in the alternative. The facts as presented by the government showed potential defenses of self defense and accident but defense counsel chose not to pursue them because they would conflict with their theory of "conspiracy to execute". The belated attempt to argue to the jury in the final stage of the trial would not rise to the level of reasonable defense, to the contrary this belated attempt destroyed whatever was left of the slim chances the incredible "conspiracy theory" had to succeed.

4. Defense counsel theory of the case was not supported by any evidence. The trial court stated that on the record (TR. 824) the appellate court repeated it, United States v. Felipe Molina Uribe, 853 F.2d 1193, 1200 (5th Cir. 1988), and any reasonable reading of the transcripts would lead to the same conclusion. Yet at the evidentiary hearing, Mr. Ramirez continued to believe in this theory of conspiracy, E.H. I. 105-106. It is well established that tactical decisions are immune from constitutional claims of deficiency see United States v. Guerra, 628 F.2d 410 (5th Cir. 1980), cert denied 450 U.S. 934. Even where an attorney's strategy may appear wrong in retrospect, a finding

4

of constitutionally ineffective representation is not automatically mandated, Baty v. Balkcom, 661 F. 2d 391, 395 n. 8 (5th Cir. 1981). However, "the mere incantation of the word 'strategy' does not insulate attorney behavior from review. The attorney's choice of tactic must be **reasonable** under the circumstances." Carver v. Singletary, 975 F. 2d 1513, 1538 (11th Cir. 1992)

Petitioner submits to the Court that under the circumstances of this case where ample evidence of self defense, accident, heat of passion defenses existed the choice of a defense without a scintilla of evidence to support it was not reasonable.

5.  Neither direct nor cross examination evidence was elucidated to support a manslaughter theory of, defense. It was undisputed that Molina had gone to a parking lot unarmed and then suddenly the purported Cuban drug dealer pointed a pistol at him. Immediately thereafter he was attacked by two additional dangerous drug dealers and he had no way to escape. Molina's only alternative, at the time, was to fight. Once he was shot in the leg, he was in shock, reacting and not acting and therefore could not be found guilty of Murder One as changed in Count 3 of the indictment. Developing evidence in support of this argument was never done because the defense had already chosen its one theory of defense and had decided not to bring in any evidence that would contradict it. Yet at the conclusion of the evidence Mr. Connors felt compelled to argue the reasonable theory of the defense relying on the government's prosecution of the case without the benefit of any direct or cross examination evidence in its support. Molina had confessed to FBI agent Franco and had told his lawyer a coherent story of what happened. Yet Mr. Ramirez persisted on pursuing this incredible theory of defense.

"[I]t is rarely a good strategic decision to advance a transparent lie as your client's primary defense, and certainly not when there is a far more plausible defense available." Sanders v. Ratelle,

21 F.3d 1446, 1460 (9th Cir. 1994) (holding that an attorney's choice to eliminate a certain defense cannot be viewed as "strategic" where counsel "failed to conduct even the minimal investigation that would have enabled him to come to an informed decision").

6.  Finally, Petitioner would ask the Court to find that there was but one theory of defense presented by counsel at trial; "the conspiracy theory", that was not supported by any fact. An alternative set of defensive theories: "self defense, accident, heat of passion", that had evidence introduced only by the government in their case in chief were only presented by one defense counsel in a closing argument without the benefit of a meaningful testing of the evidence through the adversarial process. Such a choice by a defense counsel deprived Petitioner of a fair trial.

7.  In the alternative Petitioner asks the Court to find defense counsel were ineffective in that they presented one far fetched theory through the evidence and argued simultaneously for and against it in their final argument thus depriving Petitioner of a fair trial. As summed up eloquently by the 9th Circuit.

Inconsistencies between the theories presented by the defense and prosecution are a given. However, when those inconsistencies also arise from the defense's own camp, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bland v. California Dept. of Corrections, 20 F. 3d 1469, 1479 (9th Cir. 1994) (quoting Strickland at 694, 104 S. Ct. at 2068).

8.  Petitioner urges the Court to find that had defense failed to present any evidence through direct or cross examination, and abstained from making an opening statement or closing argument, the jury would have been less likely to find that the government had proved its murder one case beyond a reasonable doubt. It is through defense's cumulative errors, starting with an opening

statement presenting an unbelievable theory along with promises to prove it, followed by a clumsy direct and cross examination contradicted by the undisputable facts and ending in an inconsistent and contradictory argument that the jury lost any doubt about defendant's guilt of the offense as charged.

In conclusion Petitioner prays the Court to find that at the trial level his Sixth Amendment right to "reasonably effective" counsel was violated and recommend to the District Judge that his conviction and sentence on Count 3 and 4 be vacated and that a new trial be ordered.

Respectfully submitted,

ROLAND E. DAHLIN II
Federal Public Defender
Southern District of Texas
Texas State Bar Number 05314000
Southern District of Texas No. 3198

By: /s/ Paul G. Hajjar
PAUL G. HAJJAR
Assistant Federal Public Defender
Attorney-in-Charge
Texas State Bar No. 8716665
Southern District of Texas No. 23573
P.O. Box 2163
Brownsville, Texas 78522-2163
Telephone: (956) 548-2573
Fax:        (956) 548-2674

## CERTIFICATE OF SERVICE

I hereby certify that on the __2nd__ day of December, 2002, a copy of the foregoing Post Hearing Brief, was hand delivered to Mr. Mark Dowd, Assistant U.S. Attorney's Office, Southern District of Texas, 600 E. Harrison, #201, Brownsville, Texas.

*/s/ Paul G. Hajjar*
PAUL G. HAJJAR
Assistant Federal Public Defender