United States District Court
Southern District of Texas 51
FILED

DEC 2 7 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FELIPE MOLINA–URIBE          *
                             *          B-87-01
v.                           *          CRIMINAL NO. B~87~51~
                             *          CIVIL ACTION NO. B-97-097
UNITED STATES OF AMERICA     *

## MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION
## TO DISMISS PETITIONER'S MOTION UNDER 28 U.S.C. §2255[1]

1.    STATEMENT OF THE CASE

On January 5, 1987, Petitioner, Felipe Molina–Uribe, was indicted in Count One, for conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§846, 841(a)(1) and 841(b)(1)(B); Count Two for possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B); Count Three for 1st Degree Murder in violation of 18 U.S.C. §§1114 and 1111: and Count Four for Use of a Firearm in Commission of a Crime of Violence in violation of 18 U.S.C. §924(c).

On April 13, 1987, at the start of the jury trial, Molina plead guilty to Counts One and Two.  The jury trial resumed as to Counts Three and Four, ending on April 16, 1987, with guilty verdicts as to Counts Three (Murder) and Four (§ 924[c] Use of Firearm).

On May 13, 1987, the court imposed consecutive twenty–five year terms of imprisonment on Counts One and Two, a life sentence for the Count Three, to run concurrent with Counts One and Two,  and a consecutive sentence of five (5) years for Count Four.

A notice of appeal was filed with the court and appeal taken to the Fifth Circuit.  On August 24, 1988, the appellate court remanded the cause to the district court with instructions to strike the term of supervised release imposed as to Counts One, yet otherwise affirmed the convictions on Counts One, Three and Four, but reversed as to Count Two, and remanded with allowance for petitioner to plead anew as to Count Two.

---

[1]  This memorandum is in response to Molina's Post Hearing Brief and merely supplements previous filings and arguments by the government.

On April 18, 1997, Molina filed a motion under 28 U.S.C. §2255 to set aside or correct his sentence. This motion is now being considered on the merits.

## 2.    JURISDICTION

Jurisdiction is under 28 U.S.C. §2255. Defendant's original motion, filed April 30, 1997, is timely. The grounds alleged in the original petition are yet subject to the "cause & prejudice" determination discussed herein. Additionally, there are unresolved jurisdictional issues before the court relating to Molina's attempt to bring additional grounds of relief. His attempt to amend his motion to include additional grounds is untimely. As such, the Court is without jurisdiction to entertain such additional grounds.

Defendant's desired amendments to the original motion should be denied because, not having been raised before, they are not timely under the AEDPA. FED. R. CIV. PROC. 15(a), permits parties to amend their pleadings after a responsive pleading has been filed "only by leave of court or by written consent of the adverse party". *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998). Molina has neither sought nor obtained either leave of court or written consent of the government. Even if he had, the late-filed claims may not be heard.

Although ordinarily, under FED. R. CIV. PROC. 15(a), amendments of habeas claims may be "freely given when justice so requires". A different situation arises when the amendments are filed after the AEDPA's statute of limitations has run. *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-504 (10th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999). Permitting claims to be filed following the expiration of the statute of limitations would "frustrate the intent of Congress" and amount to "judicial rescission" of the limitations period. *Id.* Although "clarification" of timely filed claims may be permitted to be filed by the court following the running of the limitations period, new issues do not enjoy "relation back" treatment. *Id., United States v. Lampton*, 2001 WL 263094 (E.D. La. Mar 14, 2001)(NO. CR. A. 96-125)(discussion regarding "relation back"). "A number of circuit courts have held that an untimely amendment to a section 2255 motion (i.e., one filed after AEPDA's one-year statute of limitations) that clarifies or amplifies a claim or theory in the original motion may, in the district court's discretion, relate back to the original motion if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to press a new theory. *U.S. v. Palmer, 296 F.3d 1135, *1142 (Cir. )* See, e.g., *Pittman*, 209 F.3d at 317; *United States v. Thomas*, 221 F.3d 430, 433-34 (3d Cir.2000); *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir.), cert. denied, 528 U.S. 866, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999). Compare *Pruitt v. United States*, 274 F.3d 1315, 1319 (11th Cir.2001); *Pittman*, 209 F.3d at 317-18; *Duffus*, 174 F.3d at 335; with

*Williams v. Vaughn*, 3 F.Supp.2d 567, 570 (E.D.Pa.1998) ("both motions allege constitutional defects surrounding the same 'occurrence'-- motioner's trial and penalty phases")". "The untimely claim must arise from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."" *Pittman*, 209 F.3d at 318 (internal quote omitted). In *Pittman* the Fourth Circuit found that the amended claims of ineffective assistance arose out of different conduct and transactions from those addressed in Pittman's first motion that challenged the district court's jurisdiction and the imposition of an enhanced sentence. See *Pittman*, 209 F.3d at 318. Moreover, Pittman was aware of the deficiencies alleged in his motion to amend even at the time of his initial motion. He knew that no appeal had been filed on his behalf. Further, the presentence report, which Pittman admits was available to him, recommended an enhancement for obstruction of justice. The claims in Pittman's motion to amend were not overly technical and he could have easily included them in his original § 2255 motion. *U.S. v. Pittman*, 209 F.3d 314, *318. Thus, while an amendment offered for the purpose of adding to or amplifying the facts already alleged in support of a particular claim may relate back, see *Thomas*, 221 F.3d at 436 (observing that an amendment seeking "to correct a pleading deficiency by expanding the facts but not the claims alleged in the petition" would clearly fall within Rule 15(c)), one that attempts to introduce a new legal theory based on facts different from those underlying the timely claims may not, see *Dean*, 278 F.3d at 1221 ("Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts."). "These principles are faithful both to the underlying purposes of Rule 15(c) and to the concerns about drawn-out and unlimited collateral attacks on federal criminal judgments evinced by the passage of AEDPA. They ensure that relation back will be allowed only where the original motion provides adequate notice of the prisoner's claims and the proposed amendment would neither change the fundamental nature of those claims nor prejudice the Government's defense by requiring it to prepare its case anew. See 6A Wright & Miller § 1497, at 84–85. " *U.S. v. Hicks*, 283 F.3d 380, *388-89, 350 U.S.App.D.C. 279, **287-88. "Instead, in order to relate back, the untimely claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type." *Pittman*, 209 F.3d at 318 ("both time and type"); *Duffus*, 174 F.3d at 337 ("same set of facts"); *Craycraft*, 167 F.3d at 457 ("same set of facts" and "both time and type"). "For example, in *United States v. Craycraft*, the Eighth Circuit held that an untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely claims of ineffective assistance of counsel for not pursuing a downward departure, not objecting to the characterization of the drugs, and not raising challenges to his prior state conviction". *Craycraft*, 167 F.3d at 456-57. "The court observed that amendments to a pleading under Rule 15(c) "relate back" "only if the claim asserted in the

original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence." *Id.* at 457. *Davenport v. U.S.*, 217 F.3d 1341, *1344 ( Cir.  ).

Here, none of Molina's late–filed claims "relate–back" to his timely claims. Molina confirmed that he was involved in the preparation of his timely §2255 motion, supplying the factual matters, while others prepared the legal arguments (Hearing Trans. Vol II, p. 96, 97). Molina offered no explanation why his untimely complaints were not included within his original §2255. Molina would have been aware of the factual basis for his late filed complaints at the time of his trial.

The Court is without jurisdiction to entertain Molina's late filed claims.

3.    CAUSE AND PREJUDICE

Petitioner fails to overcome his burden of "cause" and "actual prejudice" by failing to demonstrate 'cause' for failing to bring his complaints on direct appeal and resultant 'actual prejudice'.  Molina concedes that he discussed his direct appeal with his appellate counsel, who was one of his trial counsels.  Molina explained he did not suggest any issues he wanted appealed because he was not an attorney, was unaware of his rights and did not know what to do (Hearing Trans. Vol II, p. 82, 105–06). With the exception of Molina's 'ineffective assistance claims, which are typically brought for the first time in a collateral proceeding, Molina's claims should be denied as he fails to demonstrate 'cause' and 'prejudice'.  In the interests of brevity herein, Molina's "cause and prejudice" burden is explained in greater detail in the government's previous filings in this cause.

## CONTENTIONS OF PETITIONER

a.    Ineffective Assistance of counsel, as alleged in his **original timely motion**:

1.    Counsel failed to allow Molina to testify in his own defense.

2.    Counsel failed to investigate and interview witnesses.

3.    Failed to obtain an independent expert to analyze blood of Molina to determine the presence of THC or "downers".

4

4.   Counsel failed to present to the jury Molina's "theory of defense".

5.   Counsel failed to bring before the jury Molina's state of mind.

6.   Counsel failed to request a jury instruction on self defense or manslaughter.

7.   Counsel failed to preserve these issues and raise them on direct appeal.

b.   Molina seeks to untimely supplement his original timely motion with the following allegations[2]:

1.   The performance of trial counsel deprived defendant of the right to effective assistance by failing to render adequate legal assistance. That is, counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. This performance was inadequate in the following particulars;

2.   The voir dire examination, conducted by the judge, failed to inquire about or explain to the jury any element of the offenses charged or of any potential defense. Trial counsel neither requested the opportunity for the lawyers to conduct voir dire nor offered proposed questions to the trial judge to resolve this matter;

3.   Trial counsel failed to give an opening statement before the beginning of the government's case.

4.   Trial counsel failed to cross-examine government witnesses. Examination was waived on ten out of twelve witnesses. The final two government witnesses were briefly cross-examined. Two witnesses were later recalled by the defense.

---

[2] The agreed Pretrial Order contains Molina's supplemental allegations described in this section.

5

5.    Opening statement, when given, presented a theory with no
      support either in the evidence or in the investigation
      conducted by the defense.

6.    Cross and direct examination was ineffective because it
      purported to advance a theory with no basis in fact.

7.    Final argument of counsel advanced a theory with no basis in
      fact and the two counsel advanced conflicting theories.

8.    Taken together, these errors were so serious as to deprive
      the defendant of a fair trial, a trial whose result is reliable.
      That is, Mr. Molina had genuine defenses under the evidence
      arising from the events that were never adequately presented
      to the jury.

9.    Strategic choices must be relevant to "plausible options."
      The theory of defense of murder by fellow DEA officers was
      not a plausible option under standards of *Strickland v.
      Washington*.

10.   Setting aside the issue of whether counsel was effective under
      *Strickland*, the defendant failed to receive a fair trial as required
      by the Due Process Clauses and through the several provisions
      of the Sixth Amendment, including the Counsel Clause.  The
      trial afforded Mr. Molina did not adequately explore the issue
      of his mental state at the time of the incident in which an
      officer was killed.  Differently put, the definition of a fair trial
      as "one in which evidence subject to adversarial testing is
      presented to an impartial tribunal for resolution of issues
      defined in advance of the proceeding" is not met because no
      tribunal has yet tested the issue of whether the shooting of the
      agent was intentional or in the heat of passion or in self
      defense.  This failure resulted from a voir dire that did not
      review the elements of the offense with prospective jurors
      followed by a solid block of government argument and
      testimony, uninterrupted by any defense. Defendant would
      urge that without regard to abilities or intention of counsel at
      the time of trial, the trial was not fair in the sense that it cannot
      be relied on as having produced a just result. Defendant urges
      that the underlying trial must be considered to answer the issue
      of "fair trial" rather than merely conduct of counsel.

6

11.    The Constitution, Art. 1, Section 9, Clause 2 prohibits the suspension of the privilege of the Writ of Habeas Corpus, except in cases of rebellion or invasion. This provision, in itself, creates a right to relief.

12.    The inherent powers of the judiciary under Article 3 of the constitution grant the right to relief.

13.    Molina is a citizen of Mexico and accordingly protected by certain international treaties and declarations. Habeas relief should be granted to Mr. Molina under international treaty law, both as enacted and under the law of nations. Treaty law is applicable in three ways. First, Article VI, clause 2, the Supremacy Clause declares that all treaties made are the supreme law of the land. Second, customary international law and Jus *Cogens* norms are binding law in the United States. Third, international law provides guidance in the interpretation of U.S. law. Defendant urges the treaties discussed below are self-enacting or, alternatively, binding as customary international law or provide the proper basis for the interpretation of domestic law.

14.    The inalienable rights of man provide a basis for relief. This right was described in the Declaration of Independence and pre-existed any enumeration of rights in the Constitution or the Bill of Rights.

15.    Mr. Molina is a changed person from the one who was convicted some fourteen years ago. He has enjoyed a religious conversion. Continued punishment of this person, now much changed from the one who committed the acts in issue is a violation of Due Process under the Sixth Amendment and constitutes cruel and unusual punishment under the Eighth Amendment.

c.    Following an October 17-18, 2002, hearing on the merits of Molina's allegations, on December 2, 2002, Molina filed his Post Hearing Brief to argue the grounds previously brought. In it, Molina yet again attempts to introduce additional untimely issues. Although Molina argues that the issues "relate-back" to the issues he brought in his timely initial §2255 motion, for the reasons discussed below, these

7

additional grounds are unrelated and therefore untimely (Hearing p. 3).

1. <u>Counsel failed to employ a ballistics, medical, accident reconstruction expert</u>

2. <u>Counsel pursued a "conspiracy theory" despite no evidentiary support in the record</u>

3. <u>Alternative defensive theories pursued "too late" in the trial and unsupported by evidence; conflicted with and undermined potential success of the conspiracy theory</u>

4. <u>Counsel failed to pursue the defense of self-defense</u>

<u>Ineffective Assistance</u>

If the merits of the petitioner's claims are reached, petitioner would be entitled to relief only on the grounds that trial counsel violated the standards of *Strickland v. Washington*, "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984). To succeed on such a claim, Molina must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume the counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Strickland*, 466 U.S. at 690. Second, he must show that he was prejudiced by counsel's ineffective assistance. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different".... i.e., that absent the errors, the fact finder would have had a reasonable doubt respecting guilt". *Strickland*, 466 U.S. at 694-95, 104 S.Ct. 2052, 2068. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-44 (1993). The

burden of proving an ineffective assistance of counsel claim rests with the petitioner.

Molina challenges his counsel's effectiveness only as to the murder charges; he does not claim that his guilty pleas are involuntary based on ineffective assistance.

d.    Timely allegations from original motion:

1.    Right to testify.

Molina first claims that he was denied his right to testify on his own behalf, a claim that was not raised on direct appeal. He claims that "the court would not allow him to because he (trial counsel) had not included Molina's name on the witness list and had not claimed an alibi defense whatever that meant." (*Motion* at 9-10). Molina, however, does not direct this court to that portion of the record where this allegedly occurred and there is no such reference on the docket sheet. Molina's statement is highly questionable as Molina appears to be referencing FED. R.CRIM. P. 12.1, which requires a defendant to serve notice of his intent to present an alibi defense. The testimony that Molina alleges he wanted to give does not rise to the level of an alibi defense. Rather, he claims that once the government witnesses began giving their version of the offense, he realized their testimony left out critical facts and was false. (*Motion* at 10). He wanted the jury to hear his version -- that no one told him Agent Ramos or Ortiz were federal agents (admitting, however, that someone mentioned they were cops); that the CI's could not have seen what was happening in the car because the trunk was up and they were to the rear of the vehicle; that when the struggle occurred, both Ortiz and Rodriguez were in the car; and, that he believed he was in a death struggle with three drug dealers.

At his October, 2002, hearing, Molina presented a somewhat different version of events and contentions, essentially retracting his original claims. Rather than attributing his disallowance from testifying on the district court's refusal to allow Molina to testify based upon the absence of Molina's name on the witness list, or based upon his attorney's refusal to allow him to testify, Molina conceded he understood it was his decision not to testify and that he decided not to testify based upon his attorney's recommendations (Hearing Trans II, p. 90-97).

The trial record further belies Molina's claims. In (**Tr. p. 182**), Counsel for Molina, during a pre trial suppression hearing, announced on the record that Molina is aware of his right to testify, but that, upon advice of counsel has decided not to testify. Molina affirmed on the record that he "did not wish" to testify.

2.     Failure to investigate, interview witnesses, present defenses.

Molina also claims that counsel **failed to investigate** or interview witnesses. Defense counsel read the entire government prosecution file, **Vol. III, p. 368.** Counsel worked very hard to develop the "assassination" defense. An alternate defense was also presented: that four people (Agent Ramos, CI Ortiz, CI Rodriguez, and Molina) were struggling between themselves for the revolver (*Motion* at 18), and that he was trying to push the gun away from his [Molina's] head (*Motion* at 10–11) when the gun discharged. In particular, he claims that counsel failed to have conducted an independent examination of the fingerprint testing done on the revolver (*Motion* at 19).   Even assuming an omission on the part of counsel, Molina cannot demonstrate the requisite prejudice inasmuch as the results of such tests would have been of minimal, if any, evidentiary value. It was not disputed that the revolver belonged to Agent Alvarez and had been placed in the side pocket of the undercover vehicle.  According to Molina, the forensic evidence showed his fingerprints were not on the revolver. (*Motion* at 24).   However, there was no dispute of the struggle between Agent Ramos and Molina over the revolver or of the fact that the weapon was discharged during that struggle[3].   The gun fired more than once. The first shot hit Rodriguez in the hand and he backed away from the car.  Two more shots were fired during the struggle, one of which hit Molina in the leg. Ortiz admonished Molina to release the gun and told him again that Agent Ramos was a federal agent. Further, the jury, *in fact*, was presented with the testimony of Ortiz that during the struggle Molina had stated to him in Spanish that he thought Agent Ramos and Ortiz were trying to steal the marihuana and to hurt him.  It was after this that Molina forced the gun downward to Ramos' chest and fired the fourth shot mortally wounding him. Thus, the issue was one of credibility -- whether the jury believe Ortiz' testimony that he and Ramos had informed Molina of the fact that they were federal agents and whether the jury believed

---

[3]   The lack of Molina's fingerprints on the revolver does not support self defense, rather the assassination defense.

the government's theory that Molina had intentionally killed Ramos rather than accidentally killed him in self-defense or by mistake of fact.

At Molina's October, 2002, hearing, Molina confirmed his version was that the shooting was accidental, that he doesn't know how it happened (Hearing Trans II, p. 100). Molina now claimed the first bullet struck him in the leg (Hearing Trans II, p. 102).

Molina claims that counsel **failed to interview witnesses** and to investigate the background of two paid confidential informants, or Agent Ramos, who had a history of robbing drug dealer. His claim of uncalled witnesses is wholly conclusory. While he claims there exists "some evidence" of such a history, Molina does not identify what that evidence is or backup his claim with any facts. His statements are thus wholly conclusory and insufficient to state a cognizable claim. Moreover, the record reflects that counsel in fact filed numerous pretrial motions seeking exculpatory evidence and witness statements. Additionally, Defense Counsel's motion to interview Gov't witnesses was "granted". **(Tr.   p. 14).** The fact that Gov't witnesses refused to speak with Def. Counsel is not the fault of counsel, **(Tr. p. 601).**

Assuming, *arguendo*, that counsel failed to interview FBI Agent Gonzales, Molina presents nothing to demonstrate that the agent would have consented to the interview and  in fact would have testified as Molina contends. The record suggests rather that Gonzalez would not have spoken to counsel. Nor can he demonstrate that such omission would render the results of his trial fundamentally unfair. Whether CI [Rodriguez-]Ramirez told Agent Gonzales that no one in his presence told Molina he was under arrest or that they were federal agents, does not undermine Ortiz' testimony that he (Ortiz) told Molina that Agent Ramos was a federal agent and that Ramos replied in return, "I already told him he was arrested. . . ." *Id.*, at 1195.    Further, the trial testimony was that Rodriguez could not testify as to Ortiz' statements because he did not hear them and was only paying attention to what he was doing at the time (*i.e.*, leaning through the car door, grabbing Molina's leg and getting shot in the hand). *Id.*, at 1195 n. 2.

3.   Failed to obtain independent analysis of petitioner's blood

As to Molina's claim that counsel failed to independently analyze his blood samples, counsel raised the specter of an intoxication defense at trial by introducing evidence that Molina had smoked marihuana and his statements that he had some "ionamines and pasadrenes" (which the Fifth Circuit found referenced a previous event and not one that had occurred on that day). Counsel requested an intoxication defense instruction.   As the Fifth Circuit found, voluntary intoxication does not constitute an affirmative defense in this circuit but may be considered by the jury as a factor negating intent. *Id.*, at 1205. This instruction was denied by the district court with the finding that there was no evidence to support any claim of intoxication by Molina to any degree.  The Fifth Circuit agreed and found that the record evidence, to the contrary, was "strong, amply sufficient, consistent, completely credible and clearly establishe[d] that Molina was not intoxicated." *Id.*, at 1206–07. The evidence was that Molina's use of marihuana on the day of the murder was minimal, at best, and the testimony based upon observation of him was that he was clearly coherent and in control at all times. Given this evidence, Molina's argument that additional drug testing would have disclosed evidence of drug intoxication sufficient to demonstrate an impaired mental state is wholly unrealistic and self-serving.   In light of this, and the fact that the government's toxicology testing produced too low a level of alcohol content for him to even be considered under the influence, counsel pursued the better trial strategy. This was to argue that the combination of the alcohol and marihuana produced a higher intoxicating effect that either substance alone.  Counsel, in fact, called the FBI chemist for this very purpose. *Id.*, at 1207. (Tr. p. 740). Prevailing standards of review require this court valuate counsel's decision not to pursue a particular line of investigation must be assessed for reasonableness of all the circumstances and to apply a heavy measure of deference to counsel's judgment. *Westley v. Johnson*, 83 F.3d 714, 719 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 773 (1997).  Under this standard, Molina's claim does not rise to the level of a Sixth Amendment violation.

At Molina's evidentiary hearing in October, 2002, Molina did not suggest that his alleged intoxication had anything to do with the shooting.

4.     Failed to present his theory of case, state of mind, request jury instructions on self defense or manslaughter

12

Molina claims that his trial counsel failed to present his **theory of the case**; that is, that he acted in self-defense. As set out in the opinion of the Fifth Circuit, Molina's defense stated during opening argument was that he was the victim of a conspiracy and that Ramos' death was an assassination by DEA agents (Tr. 890–905). *Molina–Uribe*, 853 F.2d at 1200. During closing argument defense counsel also argued that Molina believed he was being attacked by dangerous drug dealers, that he fought back in self-defense after being shot with the first fire, and that he had no malice aforethought when the gun discharged as he was fighting for it. He also argued that if the jury believed Ortiz, then Molina was acting out of sudden passion and did not have the requisite intent to commit premeditated murder (Tr. 881–86). *Id.* Thus, contrary to Molina's argument almost ten years later, counsel in fact presented the very defense that he claims should have been presented. The theory of the case used by trial counsel was consistent with the informed wishes of the petitioner, now complained of by petitioner, and was purely a tactical decision. The Fifth Circuit has consistently held that counsel will not be constitutionally deficient merely because of tactical decisions. *United States v. Guerra*, 628 F.2d 410 (5th Cir. 1980), *cert. denied*, 450 U.S. 934.

At Molina's October, 2002, hearing, Molina disavowed the "self defense" theory of defense, opting for the defense of "accidental shooting", that he committed no knowing or intentional acts, that he never controlled the gun, and that he doesn't know how it happened (Hearing Trans II, p. 100–104, 106). Molina now additionally claims the first bullet struck him in the leg (Hearing Trans II, p. 102).

Petitioner alleges that counsel's errors relating to his failure to expose the jury to **Petitioner's mental state** at the time of the crime left the government's prosecution untested and deprived Petitioner of a fair trial. "If trial counsel's representation was so inadequate that it entirely failed to subject the prosecution's case to meaningful adversarial testing; and therefore, pursuant to *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984), constituted a denial of [petitioner's] Sixth Amendment rights, without the necessity of showing prejudice". *Jones v. Jones*, 163 F.3d 285, 295 (5th Cir. 1998).

Contrary to Molina's claims, counsel developed evidence in support of "self defense" and suggesting the defendant's actions occurred in the "heat of passion". Further, contrary to what Molina

13

claims (*Motion* at 22), trial counsel in fact had requested instructions on a voluntary manslaughter, sudden passion, self-defense, apparent danger, and converse of self-defense (Defendant's requested jury instruction no. 1), intoxication (Defendant's requested jury instruction no. 3), assault one a federal officer (*i.e.,* "whether the Defendant knew the victim to be a Federal officer and only acted as he did because of a reasonable, good faith belief that he needed to defend himself against an assault by a private citizen). (Tr. 826–32).   Unfortunately for Molina the government's evidence at trial refuted this defense and the jury rejected it.   As to his claim that the record demonstrated no "malice aforethought," this is a sufficiency issue that was raised on direct appeal and rejected. *Molina–Uribe*, 853 F.2d 1207. Molina is not entitled to relitigate it on collateral attack. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1996); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977 (1986).

At his October, 2002, hearing, Molina concedes his sole defense was that of "accident" (Hearing Trans II, p. 100, 106).

Although an alternate defense to the "agency conspiracy" defense was presented, alternate, even inconsistent, defenses are permitted in criminal law.   "Indeed, the most successful criminal attorneys are often those who can create a reasonable doubt in the jurors' minds by throwing up one or two or more plausible alternatives to the defendant's guilt". *Moore v. Johnson,* 194 F.3d 586, 611 (5th Cir. 1999); *Turner v. Johnson*, 106 F.3d 1178, 1187 (5th Cir. 1997)(broad defense offered several possibilities).   Counsel confronted the government's evidence by pointing out that no forensics were performed to determine the source of the fired bullets (Tr. P. 380–81).

5.   Failed to preserve and bring above allegations on direct appeal

Molina's above allegations are of "ineffective assistance of counsel" at trial.   As the trial record is typically insufficiently developed to permit review of such claims on direct appeal, it would not be "ineffective assistance" of appellate counsel to fail to bring such claims on direct appeal, especially when appellate counsel also served as trial counsel. *United States v. Lampazianie*, 251 F.3d 519, 527 (5th Cir. 2001), *United States v. Scott*, 159 F.3d 916, 924 (5th Cir. 1998).

14

e.    Untimely allegations:

1.    Voir Dire

Counsel's 'failure' to request individual voir dire in order to "explain" to the jury venire the elements of the offense and potential defenses did not represent "ineffective assistance". The district court has broad discretion in voir diring the venire panel. *United States v. Shannon*, 21 F.3d 77, 82 (5th Cir. 1994). In fact defense counsel requested individual voir dire, but it was denied by the district court **(Tr. 13).**        Furthermore, counsel voir dired the panel on "self defense" (Tr. P. 99).

2.    Opening statement

Petitioner complains that counsel was deficient in "failing to give an opening statement". Petitioner fails to demonstrate how he was prejudiced by such "failure". The decision to waive an Opening Statement falls within the zone of "trial strategy" and does not, in itself, indicate deficient performance by counsel. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). Waiving Opening Statement may be motivated by a "reasonable tactical objective". *United States v. Stedman*, 66 F.3d 737, 740 (5th Cir. 1995). It may reflect a "strategic choice". *Gilliard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir. 1988).

In fact, as Molina now concedes, counsel made an opening statement, albeit at the close of the government's evidence (Hearing Trans I, p. 22, 40). Molina presented "expert"[4] opinion testimony that failing to give an opening statement at the first opportunity (immediately following the government's opening statement) is "unreasonable" (Hearing Trans I, p. 22). Molina's expert also agreed that the timing of the defendant's opening statement was a tactical decision in the nature of individual preference (Hearing Trans I, p. 40). This expert opinion was based upon a review of "some" of the record and an estimated 15% of the trial transcript (Hearing Trans I, p. 19, 25).

---

[4]    The government objected to the expert's record qualifications, that insufficient predicate was established and that the topic of opinion did not lend itself to expert testimony (Hearing Trans I, p. 16, 19).

3.   Cross examination

Petitioner claims that counsel was deficient in failing to cross-examine government witnesses (Tr. P. 195–96, 236, 309, 320, 336, 373). Petitioner does not explain specifically how he suffered actual prejudice therefrom. *Berryman v. Morton*, 100 F.3d 1089, 1102 (3rd Cir. 1996). Petitioner does not suggest the specific evidence which was left unpresented or the manner in which such witnesses were susceptible to impeachment. *Pickins v. Gibson*, 206 F.3d 988, 1002 (10th Cir. 2000). Following their direct examination, Counsel deferred cross-examination of several government witnesses. Some of those witnesses were never cross-examined. The decision on whether to cross-examine witnesses must be reviewed in the context of the nature of the evidence and strength of the government's case. *Murray v. Maggio*, 736 F.2d at 283.

4.   Inherent rights of man

Despite petitioner's urging to the contrary, the government can find no basis for relief under international law or treaty, or under the inherent rights of man.  The inherent power of the court, by definition, exists where statutory authority is absent.   "Actual innocence" provides relief under 28 U.S.C. §§2241 and §2255.

5.   Post conviction rehabilitation

Continued incarceration of a guilty but religious and rehabilitated prisoner does not constitute a violation of due process or cruel and unusual punishment. *Graham v. Johnson*, 168 F.3d 762, 787 (5th Cir. 1999)(continued incarceration of innocent person not violation of due process or cruel and unusual punishment). Court's power to acquit convicted defendant limited to instances when court has subject matter and personal jurisdiction of the case. *Carlisle v. United States*, 517 U.S. 416, 443, 116 S.Ct 1460, 1474 (1996); *Irwin v. Wolfe*, 529 F.2d 1119, 1123 (8th Cir. 1976)(incarceration of rehabilitated convict does not offend Eight Amendment); *Fielding v. LeFevre*, 548 F2d 1102, 1108 (2nd Cir. 1977)(rehabilitation not sole goal of sentencing); *Smith v. Nelson*, 1997 WL 441309 (N.D.Ill)(re-sentencing of rehabilitated prisoner to 45 years imprisonment did not offend due process or the Eighth Amendment).

f.   Untimely Allegations (December 5, 2002):

16

1.    Counsel failed to employ a ballistics, medical, accident
      reconstruction expert

In his Hearing Brief Molina argues that failure to employ the above experts represented ineffective assistance. Expert testimony is admissible if its admission makes a fact "more probable or less probable than it would be without the evidence." Rule 401, F.R.E., *U.S. v. Pino*, 606 F.2d 908, *919 (5th Cir. 1979). Molina's expert witness first characterized the failure to present a "blood splatter" expert as "unreasonable" (Hearing Trans I, p. 20). The expert later withdrew that opinion (Hearing Trans I, p. 37).

Premising his opinions on Molina's defense as "self-defense", the expert also opined that it was unreasonable not to employ an expert to testify as to the effects that "shock" from being shot would have upon Molina to negate the necessary scienter for murder being an "intentional" act (Hearing Trans I, p. 37, 38). However, Molina testified that his true defense was not "self defense" but rather accident, "the gun just went off". "Self-defense (in the words of Molina's expert) appears to be contradictory to the defense of accident; self-defense presumes an intentional act itself. 'The right of self-defense exists at all places and under all circumstances. Where the party charged with the offense has been wrongfully assailed by his adversary, and placed in a position of great peril, or a position from which, situated as the party charged with the offense believes and has a right to believe, or any reasonable person situated as he was would have a right to believe, that his adversary then intended to take his life, or do him serious bodily harm, and acting upon such appearances, and from that cause only, and in order to save his own life, or prevent either his life being taken or an act being done that likely would take his life, he has a right to act on those appearances, and repel force by force, even to the extent of taking human life, if necessary". *Stevenson v. U.S.*, 86 F. 106, *109 (5th Cir. 1898), *U.S. v. Harrelson*, 754 F.2d 1153, 1172 (5th Cir. 1985)(18 U.S.C. §1114 requires malice aforethought), *U.S. v. Croft,* 124 F.3d 1109, 1122 (9th Cir. 1997)(same).

The accident reconstruction expert would also have been unavailing in support of a "self-defense" defense or "accident" defense. The operative physical facts of the event were essentially uncontested. The agent pulled a gun on Molina. Molina attempted

to wrestle the gun away from the victim. Moliña was shot in the leg prior to the agent being shot in the chest. (See Agreed Facts in Joint Pre Trial Order)    Molina fails to demonstrate how an "accident reconstruction" expert could have benefitted him beyond what the government conceded in its case in chief.  The case essentially turned on a credibility analysis regarding whether Molina was told he was under arrest by federal agents, and whether Molina obtained control over the pistol immediately prior to the fatal shot.

2.    <u>Counsel pursued a "conspiracy theory" despite no evidentiary support in the record</u>

3.    <u>Alternative defensive theories pursued "too late" in the trial and unsupported by evidence; conflicted with and undermined potential success of the conspiracy theory</u>

Too little, too late: Molina argues that it was ineffective assistance of counsel to pursue the "conspiracy theory"as it enjoyed no factual support in the record.  Molina admits that he acceded to pursuit of the conspiracy theory (Hearing Trans II, p. 98–104). Molina relies upon the 'sufficiency of evidence' analysis in the Fifth Circuit opinion which reported no evidence of a DEA conspiracy to murder the victim.  However, the context of the instant analysis is quite different.  An "ineffective assistance" analysis of trial counsel's performance, in the context of applicable burden of proof and presumption of competence is at the far spectrum from a sufficiency of the evidence analysis.

Additionally, there was fertile ground in the record to pursue the "conspiracy theory".  There was evidence the FBI ordered a halt to forensic analysis on Molina to determine if he had fired a gun.  There was reference in a lab report that a towel was located in the rear seat of the subject vehicle which appeared to have been used as a silencer. There were more holes in the vehicle than the number of shots reportedly fired (4). Reminiscent of the "magic bullet" described in the Warren Report, counsel characterized the multiple holes made in the vehicle upholstery as the "bouncing bullet".   Counsel apparently was in a possession of an affidavit from a CI reportedly referencing animosity between the victim and his fellow agents.   Counsel attempted to introduce evidence of a law suit filed by the victim against the government.  On the first day of trial, the government moved to limine the matters of the affidavit and law suit.  This motion

was granted on the first day of trial, somewhat hamstringing counsel's efforts to develop the defense.

Molina also argues that the defenses of "self–defense" and "someone else killed him" were so contradictory that they "militated against a [favorable] finding for either one of them" (Hearing Trans I, p. 45). However, as Molina's expert admitted "conflicting" or "contradictory" defenses are lawful and commonly pursued, even in the context of murder charges, in which the defendant alternatively denies killing the individual and yet argues self defense (Hearing Trans I, p. 29–31).

Molina argues that the defense of self–defense was invoked too late in the trial to be effective. However, counsel actually voir dired the jury panel on self–defense as a complete defense during jury selection (Tr. P. 99). Furthermore, the government's version of events essentially supported the defense of "self–defense".

4.    Counsel failed to pursue the defense of self–defense

Molina concedes that the defense of "self–defense" was pursued at trial. The jury was sufficiently apprized of evidence in support of "self–defense". The government's position was that the death occurred following a struggle over the agent's pistol. All counsel for Molina needed to do was to argue that the fatal shot occurred prior to Molina gaining control over the pistol, while the government argued that the fatal shot occurred after Molina gained control of the pistol. That was essentially the crux of the case. Even if the "conspiracy theory" was without basis, the jury heard evidence in support of accident and self–defense. The jury was charged on those theories. We must presume the jury followed the district court's instructions and passed upon those defenses.

In summary, Molina has failed to demonstrate that counsel's performance so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result", or that trial attorneys' performance was "under all circumstances unreasonable under the prevailing norms"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

<u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, the government respectfully prays that Molina's §2255 petition be dismissed or, in the alternative, be subject to summary dismissal.

Respectfully submitted,
MICHAEL T. SHELBY
United States Attorney

JAMES L. TURNER
Chief, Appellate Division
Assistant United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas, 78520
Texas Bar No. 06070500
Federal Bar No. 9314
(956) 548-2554

20

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney,  certify that a true and correct copy of the above document has been hand–delivered, today, December 27, 2002, to:

Paul Hajjar
Asst. Federal Public Defender
Attorney for Petitioner
Brownsville, TX

Mark M. Dowd
Assistant United States Attorney

21