IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

MAR 17 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| FELIPE MOLINA-URIBE, § | |
| Petitioner, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. B-97-097 |
| UNITED STATES OF AMERICA, § | |
| Respondent. § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the court is petitioner, Felipe Molina-Uribe's ("Molina") Motion to Vacate or Set Aside Sentence (Docket No. 1) filed on April 30, 1997, pursuant to 28 U.S.C. §2255. For the reasons stated below it is recommended that the motion be granted.

### I. Factual Background

Molina was involved in drug trafficking. He was the subject of a sting operation, by the Drug Enforcement Agency ("DEA"), which ended in the shooting death of an undercover agent, Agent Ramos ("Ramos"). Molina was charged with drug related offenses as well as for the murder of Ramos.

On December 31, 1986, Molina and co-defendant Jesus Garcia Nieto ("Garcia") met with another co-defendant, Benito Cavazos Lamas ("Cavazos"), in McAllen in order to find a buyer for some marijuana. Cavazos arranged a meeting for Molina with Roberto Ortiz ("Ortiz"), without knowing Ortiz was an undercover agent. Another undercover agent, Ernesto Rodriguez Ramirez ("Rodriguez"), accompanied Ortiz to the meeting. After various negotiations, Molina was scheduled to meet with a Cuban buyer from New York, who was actually Ramos.

Ramos, Ortiz, and Rodriguez arrived at the designated parking lot around seven o'clock in the evening in Las Milpas, Texas, where the exchange with Molina was to take place. Ortiz

and Rodriguez inspected the marijuana in Molina's van. Then all three men walked over to the undercover vehicle where Ramos was seated in the front seat. Molina entered into the back seat. The vehicle was assigned to DEA Special Agent Alvarez ("Alvarez"), whose gun was in the side door compartment.

After a short conversation between the men, Ortiz and Rodriguez walked to the rear of the undercover vehicle in order to retrieve the money for the sale. The lifting of the trunk was a signal for the rest of the agents to close in on the vehicle. When the trunk was opened, Ortiz noticed that Ramos has drawn his gun and pointed it at Molina. Molina grabbed Ramos and the gun and tried to wrestle it from Ramos. Ortiz and Rodriguez attempted to enter the vehicle to provide assistance. A struggle ensued among all four men.

The gun discharged and Molina was shot in the leg. A second shot injured Rodriguez's hand and he thereafter retreated from the vehicle. Rodriguez was unable to testify concerning any statements informing Molina that the men were DEA agents. However, Ortiz testified that he informed Molina of their status as agents, but that Molina only responded in Spanish stating he was afraid and believed the men were going to hurt him and steal the marijuana. The gun went off two more times, with one bullet fatally wounding Ramos in the chest.

Molina plead guilty to the drug offenses (Counts 1 and 2 of the indictment). On April 13, 1987, after a jury trial, Molina was convicted in the United States District Court for the Southern District of Texas in Cause No. B-87-01, for the murder of a federal employee in violation of 18 U.S.C. §1111 and §1114. Molina was sentenced to life in prison. An appeal was filed and on August 24, 1988, and the conviction was affirmed. *United States v. Molina-Uribe*, 853 F.2d 1193 (5th Cir. 1988), cert. denied, 489 U.S. 1022, 109 S.Ct. 1145 (1989).

Molina then filed for relief under 28 U.S.C. § 2255 on April 30, 1997, (Docket No. 1) which was denied as time barred by United States District Judge, Filemon B. Vela (Docket No. 10). Molina filed his Notice of Appeal (Docket No. 11) on April 19, 1999. The order dismissing Molina's motion was set aside on September 27, 1999 (Docket No. 14).

A hearing was held on October 17 and 18, 2002, before United States Magistrate Judge, John Wm. Black. Molina was represented by Assistant Public Defender, Paul G. Hajjar. Molina testified as to several aspects of the incident itself, communications with his attorney, and the overall trial strategy.

## II. Molina's Testimony at the October 2002 Hearing

### A. The Shooting Incident

Molina testified that he arrived at the location of the sting operation in order to complete an illegal drug transaction with a man, who was actually Ramos. He was unaware that the person(s) he was dealing with were undercover federal agents, but believed they were drug dealers. Molina did not take a gun to the scene, but upon entering the vehicle he noticed one located in the side pocket, which was later identified as belonging to Alvarez.

Molina further testified that once in side the vehicle, Ramos turned to him with his weapon drawn. According to Molina, believing the men to be drug dealers, he construed the drawn weapon as a threat and as an intent to overtake him, steal the drugs, and shoot in him in the process.

Molina testified that during the struggle, he could not ascertain who had control of the gun at each particular time it discharged. Instead, Molina stated that during the commotion he concentrated on trying to keep the gun from firing at him.

3

### B. Molina's Communications with Counsel

Molina testified that he told his attorney his version of the incident and explained the struggle between himself and the agents. Molina reiterated that he was trying to keep himself from getting shot, in what he believed to be a drug deal gone bad. In his mind Molina testified, he was innocent and told his attorney that he wanted to tell the jury his perception of the events. Molina stressed that defense counsel strongly advised him that taking the stand was unacceptable and would most certainly result in a guilty verdict. Molina testified that he nonetheless believed he should take the stand, but instead opined that his lawyer knew best and his suggestion was the only right one.

### C. Defense Trial Tactics

The record shows that Molina's attorney pursued a bizarre theory of defense that was referred to throughout the hearing as the "conspiracy theory". This theory was predicated on the idea that Ramos was disliked by his fellow law enforcement agents for a number of different reasons and that they orchestrated the sting operation in order to kill Ramos. It is unclear whether the theory involved the agents shooting Ramos directly, or whether they planted the gun in the vehicle in hopes that Molina would use it to kill Ramos. There was absolutely no evidence to support this theory.

Molina testified that he did not understand why his attorney was pursuing this defense when there was no evidence to support it. Molina stated that he asked his attorney not to proceed with it and requested that he present a self-defense or accident theory, which was generally supported by the evidence and his own testimony.

The record shows that there was a jury instruction given for self-defense. However, the

only reference to self-defense was made in passing in the closing argument by one of Molina's attorneys. A jury instruction for intoxication was also sought, but ultimately denied as there was no evidence to support it.

## III. Claims of the Parties

### A. Petitioner - Molina

#### 1. Motion Filed Pursuant to §2255 Timely Filed

Molina timely filed his Motion to Vacate pursuant to §2255 on April 30, 1997. Molina raised several grounds in support of his claim of ineffective assistance of counsel.

> a. Trial counsel failed to allow Molina to testify in his own defense.
> b. Trial counsel failed to investigate and identify witnesses.
> c. Trial counsel failed to obtain an independent expert to analyze the blood specimen to determine the presence of substances other than alcohol.
> d. Trial counsel failed to present Molina's theory of defense, as counsel presented other theories instead.
> e. Trial counsel failed to bring before the jury evidence of Molina's state of mind.

#### 2. Proposed Joint Pretrial Order

Molina also states his legal contentions in support of his claim in the Proposed Joint Pretrial Order (Docket No. 42) filed on October 9, 2002. He urges that these are not entirely new claims, but instead merely serve to clarify his earlier pro se petition. Conversely, the Government argues that these are additional or supplemental arguments and are time barred.[1] The following are Molina's basic legal contentions:

> a. Performance of trial counsel deprived Molina of the right to effective assistance of counsel by failing to render adequate legal assistance.
> b. Voir dire examination failed to inquire or explain any elements of the offense or any potential defenses.

---

[1] Respondent's argument is clarified under Section III, Subsection B, of this report.

  c. Trial counsel failed to give an opening statement before the beginning of the governments case.
  d. When the opening statement was given it presented a theory with no evidentiary support.
  e. Trial counsel failed to cross examine government witnesses.
  f. Cross and direct examination was ineffective because it advanced a theory with no basis.
  g. Molina has genuine defenses that trial counsel failed to adequately present to the jury.
  h. The theory of defense employed by trial counsel was not plausible.
  i. Molina failed to receive a fair trial in violation of the Due Process Clause because the tribunal did not test the issue of whether the shooting was intentional, or in the heat of passion, or in self defense.

### 3. Post Hearing Brief

Molina filed a Post Hearing Brief (Docket No. 50) on December 2, 2002, once again stating his arguments in support of the ineffective assistance of counsel claim. The Government reiterates its position that Molina's allegations are time barred as entirely new claims. The following are Molina's contentions:

  a. Erroneous Presentation of Only One Theory of Defense
  Molina argues that his attorney chose to put forth only one theory of defense, referred to as the conspiracy theory. This defense was premised on the notion that the murdered DEA agent was disliked by his fellow agents, who had him set up to be murdered during the sting operation. Molina argues that this theory was unfounded and that his version of the events would have reasonably supported a self defense theory.

  b. Failure to Present Evidence of the One Theory of Defense
  Molina argues that although his attorney committed to presenting only one defense, he failed to present evidence of that theory either through direct or cross examination. The one piece of evidence that would have marginally supported the conspiracy theory was not permitted to be introduced into evidence before trial began.

  c. Failure to Pursue Other Defenses
  Molina argues that his attorney should have put on evidence relating to other theories of defense that were more reasonable, including self defense, heat of passion, accident, or intoxication. Molina insists that he wanted to take the stand to testify to the events of the shooting,, but that he was told not to do so by his attorney. Molina contends that the mere reference to self defense in the closing argument and in the jury instruction was not sufficient, as no evidence was presented to support such theory.

### 4. Ineffective Assistance of Counsel

Molina urges the court that the allegations made in the §2255 motion, the Joint Pretrial Order and the Post Hearing Brief demonstrate a constitutional violation of his right to representation as set forth in *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.

2d 674 (1984). Molina claims that his attorney's performance was unreasonable, as he presented only one unsupported theory of defense, while several other much more viable and supportable theories were available. Experts could have testified as to the shock Molina sustained after being shot, the fact that his fingerprints were not on the gun, blood spatter patterns and accident reconstruction demonstrating that Molina was not in control of the gun. Molina argues that although counsel's trial strategy is generally immune from review, the attorney's choice of tactic must be reasonable under the circumstances, citing *Carver v. Singletary*, 975 F.2d 1516, 1538 (11th Cir. 1992). In addition, Molina argues that when an attorney chooses not to use a possible defense theory and has not even conducted minimal investigation into it, his actions cannot be characterized as a strategy, citing *Sander v. Ratelle*, 21 F.3d 1446, 1460 (9th Cir. 1994). Molina urges that had evidence of the alternative defense theories been presented, instead of a bizarre unsupported conspiracy theory, the jury would have been more likely than not to have formed a reasonable doubt as to Molina's specific intent.

### B. Respondent - Government

The Government concedes that Molina's §2255 motion is timely, but argues that the claims in the Joint Pre-trial Order and the Post Hearing Brief are untimely. In addition, the Government argues that all claims are subject to the "cause and prejudice" test, which has not met.

#### 1. Cause and Prejudice

The Government argues that because Molina did not raise his arguments on

appeal he must now demonstrate the requisite cause[2] and prejudice[3] for failing to do so, citing *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). If Molina cannot do this, the court is without jurisdiction to hear such claims.

### 2. Untimely Supplemental Amendments

The Government states that under FED. R. CIV. PROC. 15(a), amendments of a §2255 motion may be freely given when justice so requires, but not if the amendment was filed after the Antiterrorism and Effective Death Penalty Act[4] ("AEDPA") statute of limitations has run. The Government argues that mere clarification of earlier timely filed claims is permitted, but entirely new claims will be time barred as they do not " relate back" to the original petition. In order to relate back, the untimely claims must arise from the same set of facts as the timely filed claim and not from separate conduct or a separate occurrence in both time and type.[5]

### 3. Ineffective Assistance of Counsel

The Government argues that even if the supplemental arguments were not time barred, Molina is not entitled to a new trial because the *Strickland* standard has not been met.

#### a. Right to Testify

The Government states that it was clearly Molina's decision whether to

---

[2]The cause standard requires a showing that some objective factor external to the defense prevented the defendant from raising on direct appeal the claim advanced in the §2255 proceeding. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996).

[3]To establish the requisite degree of prejudice, the defendant must demonstrate that any alleged error resulted in an actual and substantial disadvantage that infected his criminal proceedings with error of constitutional dimensions. *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1992) (en banc).

[4]Amendment to 28 U.S.C. §2255 made April 24, 1996 by Pub.L. 104-132, Title I, §105, 110 Stat. 1220.

[5]The Government cites: *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000).

8

testify or not and that he voluntarily decided not to, based on his attorney's recommendations. The Government points to the record of the pre-trial suppression hearing, which shows that Molina was aware of his right to testify and upon advice of counsel, decided not to exercise that right.

### b. Failure to Conduct Proper Investigation and Interview Witnesses

The Government argues that had Molina's attorney done independent fingerprint testing, the results would have had minimal or no evidentiary value. Similarly, introducing results of a blood test would not have been helpful, as the evidence introduced at trial showed that Molina had used marijuana only minimally and he appeared coherent and in control. As for the blood spatter or accident reconstruction expert, the Government contends that this evidence would be superfluous, as the facts surrounding the shooting were clear and unequivocal. Ramos pulled a gun on Molina, Molina attempted to wrestle the agent and was shot in the leg before the agent was shot in the chest. These facts were presented at trial and the only issue was one of credibility.

### c. Conspiracy Theory of Defense

The Government argues that defense counsel discussed the theory of self defense in the closing argument which was supported by the testimony of Ortiz. Ortiz testified that Molina had stated in Spanish that Molina thought the agents were drug dealers who were trying to hurt him and steal the marijuana. The Government argues that this evidence was enough to support the theory of self defense and sudden passion, but the jury must not have considered Ortiz to be credible.

The Government also contends that defense counsel did present evidence to

9

support the conspiracy theory. There was testimony concerning: 1) a towel used as a silencer; 2) an FBI order to abandon the forensic analysis on the gun; 3) the presentation of the "bouncing bullet" theory explaining why there were more bullet holes than shots fired from the gun; 4) an affidavit from an agent discussing the animosity between Ramos and the DEA; and 5) a law suit filed by Ramos against the Government, although the latter two were later ruled inadmissible.

## IV. Analysis

### A. Cause and Prejudice

The Government argues that Molina did not raise his claims on direct appeal and has failed to demonstrate the requisite cause and prejudice, thus prohibiting him from bringing these claims. The cause and prejudice standard applies when the Government raises this procedural bar by asserting it in the district court during the hearing on the §2255 motion. However, even if the Government raises this procedural bar, an ineffective assistance of counsel claim will automatically satisfy the cause and prejudice standard. *See United States v. Patten*, 40 F.3d 774, 776 (5th Cir.1994) (per curiam), cert. denied, 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995). "[T]he general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Munoz-Romo*, 947 F.2d 170, 179 (5th Cir.1991) (quoting *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir.1987), cert. denied, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988)).

The resolution of the Government's argument, depends upon the characterization of Molina's claims. The §2255 motion characterizes the claim as ineffective assistance of counsel.

The grounds that Molina states in support thereof relate specifically to counsel's conduct during the trial. Molina may have not clearly or perfectly structured his allegations, but as a pro se petitioner, it appears that the entire basis for the petition was ineffective assistance of counsel.

In addition, it appears that Molina's subsequent allegations as set forth in the Joint Pretrial Order and the Post Hearing Brief, both later prepared with the aid of appointed counsel, merely clarify what Molina tried to set forth in his §2255 motion. These subsequent grounds are also framed under the ineffective assistance of counsel claim. Therefore, Molina would not have to show cause and prejudice for each allegation, as it is deemed automatic under *Patten*.

### B. Untimely Claims Made in Joint Pretrial Order and Post Hearing Brief

The Government argues that the claims made in the Joint Pretrial Order and the Post Hearing Brief raise entirely new claims, do not relate back to the original petition, and are time barred under the AEDPA statute of limitations. Molina states in his §2255 motion that his counsel failed to present his self defense theory and instead pursued other theories which were not supported by evidence. This blanket assertion alone encompasses the sub-issues that Molina expands upon in later proceedings. The §2255 motion was prepared by Molina, while the subsequent grounds were made and further clarified with the help of appointed counsel. Molina may have not precisely applied his facts to the *Strickland* test, but his subsequent claims did arise out of counsel's very same conduct at trial. Thus, the claims in the Joint Pretrial Order and Post Hearing Brief are timely.

### C. Ineffective Assistance of Counsel

Molina is entitled to relief. Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress, claiming to be released upon the ground that

11

the sentence was imposed in violation of the Constitution or laws of the United States, ...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." There are several grounds upon which the motion can be made. In the context of the Sixth Amendment, a constitutional issue arises when a prisoner's right to counsel is violated. The standard for ineffective assistance of counsel was set forth by the Supreme Court in *Strickland*.

The defendant bears burden of showing by preponderance of evidence that he was deprived of his right to effective counsel. *Clark v. Johnson*, 227 F.3d 273 (5th Cir. 2000). In order to prevail, the defendant in the case must show that 1) his attorney's performance was, under all circumstances, unreasonable under the prevailing norms, *Strickland* at 687; and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, *Strickland* at 694. Underlying the above two prong test is the standard of review that is to be employed. In evaluating defendant's claims of ineffective assistance of counsel, judicial scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Johnson v. Cockrell*, 2002 WL 1765392 (5th Cir. 2002).

In analyzing whether an attorney's performance was unreasonable, "defense counsel's conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel." *Smith v. Cockrell*, 2002 WL 31447742 (5th Cir. 2002). This is a heavy burden, as the attorney's strategy must be so poor that it robs the defendant of *any* opportunity to receive a fair trial. *Id.* In particular, decisions as to whether or not to call certain witnesses to stand, whether to ask or refrain from asking certain questions, and the like, are tactical determinations, and errors, even egregious ones, in this respect, do not provide basis for

12

postconviction relief. *U. S. v. Rubin*, 433 F.2d 442 (5th Cir. 1970).

The test in Strickland consists of two parts. If the court finds that the attorney's performance was unreasonable, it must still determine whether any prejudice resulted therefrom, in order to grant relief under the statute. To establish prejudice resulting from counsel's deficient performance, defendant must show that there is at least a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Neal v. Puckett*, 2002 WL 407382 (5th Cir. 2002). "[I]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding". *Strickland* at 693.

### 1. Reasonable Performance

Molina contends that his attorney's concentration on one speculative defense, unsupported by any evidence was unreasonable. Molina points out that his attorney failed to present more viable defenses and failed to introduce witnesses to testify in support of the conspiracy theory of defense. These contentions are facts that are capable of verification as evidenced in the transcript of the trial court proceeding.

In scrutinizing the performance of counsel for Molina in this case, the proper measure of attorney performance remains simply reasonableness under prevailing professional norms. *Lyons v. McCotter*, 770 F.2d 529 (5th Cir. 1985). In this case, there was no apparent sound reason for counsel to predicate his client's entire defense on a theory that is not only bizarre, but devoid of evidentiary underpinnings. This was not merely a flawed trial tactic or a below par strategy. In essence, there was no strategy when a completely idiosyncratic theory of defense was used in place of a viable and supportable theory. Although this court recognizes the

constraint, which mandates that judicial scrutiny of this claim be highly deferential, defense counsel's choices fell outside the wide range of reasonable professional assistance.

### 2. Prejudice

*Strickland* is clear that unreasonable performance is only one part of the analysis. The second part necessitates an inquiry into the prejudice, if any, caused by the performance. To demonstrate prejudice, there must be a reasonable probability that result of the proceedings would have been different but for counsel's unprofessional errors. Specifically, a "reasonable probability" is one sufficient to undermine confidence in outcome of proceeding. *Summit v. Blackburn*, 795 F.2d 1237 (5th Cir. 1986). The law does not require the defendant to show that there is an absolute likelihood that the result of the proceedings may have been different, defendant need only show a "reasonable" likelihood. A likelihood or probability is not an unequivocal prediction of a jury's thought processes, but one that is capable of being anticipated or considered.

In this case, the jury found beyond a reasonable doubt that Molina had the specific intent to commit premeditated and deliberate murder with malice aforethought. Although they were given a self defense instruction, they were not exposed to evidence of it. It is conceivably consistent with reason, that this jury was unlikely to find the requisite intent, had defense counsel actually put on evidence of a defense. The conspiracy theory was not a defense, as it did in no way justify the actions allegedly taken by Molina. Failure of counsel to utilize a defense supported by evidence certainly undermines confidence in the jury's decision, as it was presented with only the government's version of the facts.

## V. Recommendation

Molina has met the two part test in *Strickland,* which is necessary to be successful in a claim for ineffective assistance of counsel. There was a sufficient showing that his attorney's representation was unreasonable and that it was more likely than not, that but for his attorney's performance, the result of the proceeding would have been different.

**IT IS RECOMMENDED** that Molina's Motion to Vacate or Set Aside Sentence pursuant to 28 U.S.C. § 2255 be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 17th day of March, 2003.

John Wm. Black
United States Magistrate Judge