

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 1 2003

Michael N. Milby
Clerk of Court

FELIPE MOLINA–URIBE          *
                             *
v.                           *
                             *    CIVIL ACTION NO. B-97-097
                             *
UNITED STATES OF AMERICA     *
(CRIMINAL NO. B-87-01-S1)    *

<u>GOVERNMENT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION UNDER 28 U.S.C. §2255</u>

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America (hereinafter referred to as "the government")
files its objections to the Magistrate Judge's Report and Recommendations for the
28 U.S.C. §2255 motion filed by Petitioner, Felipe Molina–Uribe (hereinafter
referred to as "Molina"), and in support thereof would respectfully show the court
the following:

I.

<u>JURISDICTION</u>

A.    <u>Procedural history</u>.

On January 5, 1987, Petitioner, Felipe Molina–Uribe, was indicted in Count
One, for conspiracy to possess with intent to distribute a controlled substance in
violation of 21 U.S.C. §§846, 841(a)(1) and 841(b)(1)(B); Count Two for possession
with intent to distribute a controlled substance in violation of 21 U.S.C.
§§841(a)(1) and 841(b)(1)(B); Count Three for First Degree Murder in violation of

18 U.S.C. §§1114 and 1111: and Count Four for Use of a Firearm in Commission of a Crime of Violence in violation of 18 U.S.C. §924(c).

On April 13, 1987, at the start of the jury trial, Molina plead guilty to Counts One and Two.  The jury trial resumed as to Counts Three and Four, ending on April 16, 1987, with guilty verdicts as to Counts Three (Murder) and Four (§ 924[c] Use of Firearm).

On May 13, 1987, the court imposed consecutive twenty–five year terms of imprisonment on Counts One and Two, a life sentence for the Count Three, to run concurrent with Counts One and Two,  and a consecutive sentence of five (5) years for Count Four.

A notice of appeal was filed with the court and appeal taken to the Fifth Circuit.  On August 24, 1988, the appellate court remanded the cause to the district court with instructions to strike the term of supervised release imposed as to Counts One, yet otherwise affirmed the convictions on Counts One, Three and Four, but reversed as to Count Two, and remanded with allowance for petitioner to plead anew as to Count Two.

On April 18, 1997, Molina filed a motion under 28 U.S.C. §2255 to set aside or correct his sentence.  On October 9, 2002, Molina sought to expand his complaints with the filing of a Joint Pre Trial Order.  This motion is now being considered on the merits.

2

On October 17 and 18, 2002, the U.S. Magistrate Judge conducted an evidentiary hearing relating to petitioner's motions filed pursuant to 28 U.S.C. §2255. The U.S. Magistrate Judge filed its report and recommendation granting the petitioner's motion filed pursuant to 28 U.S.C. §2255 on March 17, 2003.

B.    Jurisdiction

Jurisdiction is under 28 U.S.C. §2255. Molina's original §2255 motion is timely. The grounds alleged in the original petition are yet subject to the "cause and prejudice" determination discussed in the Government's Responses to said motions. Additionally, there are unresolved jurisdictional issues before the court relating to Molina's attempt to bring additional grounds of relief. His attempt to amend his motion to include additional grounds is untimely. As such, the Court is without jurisdiction to entertain such additional grounds.

II.

## CONTENTIONS OF PETITIONER

A.    Timely §2255 Motion

    i.    Ineffective Assistance of counsel, as alleged in his original timely motion:

    ii.    Counsel failed to allow Molina to testify in his own defense;

    iii.    Counsel failed to investigate and interview witnesses;

    iv.    Failed to obtain an independent expert to analyze blood of Molina to determine the presence of THC or "downers";

    v.    Counsel failed to present to the jury Molina's "theory of defense" (self-defense);

vi.  Counsel failed to bring before the jury Molina's state of mind;

vii.  Counsel failed to request a jury instruction on self defense or manslaughter; and

viii.  Counsel failed to preserve these issues and raise them on direct appeal.

2.  Molina seeks to untimely supplement his original timely motion with the following allegations:

   i.  The performance of trial counsel deprived defendant of the right to effective assistance by failing to render adequate legal assistance. That is, counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. This performance was inadequate in the following particulars;

   ii.  The voir dire examination, conducted by the judge, failed to inquire about or explain to the jury any element of the offenses charged or of any potential defense. Trial counsel neither requested the opportunity for the lawyers to conduct voir dire nor offered proposed questions to the trial judge to resolve this matter;

   iii.  Trial counsel failed to give an opening statement before the beginning of the government's case;

   iv.  Trial counsel failed to cross-examine government witnesses. Examination was waived on ten out of twelve witnesses. The final two government witnesses were briefly cross-examined. Two witnesses were later recalled by the defense;

   v.  Opening statement, when given, presented a theory with no support either in the evidence or in the investigation conducted by the defense;

   vi.  Cross and direct examination was ineffective because it purported to advance a theory with no basis in fact;

4

vii.   Final argument of counsel advanced a theory with no basis in fact and the two counsel advanced conflicting theories;

viii.  Taken together, these errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. That is, Mr. Molina had genuine defenses under the evidence arising from the events that were never adequately presented to the jury;

ix.    Strategic choices must be relevant to "plausible options." The theory of defense of murder by fellow DEA officers was not a plausible option under standards of *Strickland v. Washington*;

x.     Setting aside the issue of whether counsel was effective under *Strickland*, the defendant failed to receive a fair trial as required by the Due Process Clauses and through the several provisions of the Sixth Amendment, including the Counsel Clause. The trial afforded Mr. Molina did not adequately explore the issue of his mental state at the time of the incident in which an officer was killed. Differently put, the definition of a fair trial as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding" is not met because no tribunal has yet tested the issue of whether the shooting of the agent was intentional or in the heat of passion or in self defense. This failure resulted from a voir dire that did not review the elements of the offense with prospective jurors followed by a solid block of government argument and testimony, uninterrupted by any defense. Defendant would urge that without regard to abilities or intention of counsel at the time of trial, the trial was not fair in the sense that it cannot be relied on as having produced a just result. Defendant urges that the underlying trial must be considered to answer the issue of "fair trial" rather than merely conduct of counsel;

xi.    The Constitution, Art. 1, Section 9, Clause 2 prohibits the suspension of the privilege of the Writ of Habeas Corpus, except in cases of rebellion or invasion. This provision, in itself, creates a right to relief;

xii.   The inherent powers of the judiciary under Article 3 of the constitution grant the right to relief;

5

xiii.   Molina is a citizen of Mexico and accordingly protected by certain international treaties and declarations. Habeas relief should be granted to Mr. Molina under international treaty law, both as enacted and under the law of nations. Treaty law is applicable in three ways. First, Article VI, clause 2, the Supremacy Clause declares that all treaties-made are the supreme law of the land. Second, customary international law and Jus *Cogens* norms are binding law in the United States. Third, international law provides guidance in the interpretation of U.S. law. Defendant urges the treaties discussed below are self-enacting or, alternatively, binding as customary international law or provide the proper basis for the interpretation of domestic law;

xiv.    The inalienable rights of man provide a basis for relief. This right was described in the Declaration of Independence and pre-existed any enumeration of rights in the Constitution or the Bill of Rights; and

xv.     Mr. Molina is a changed person from the one who was convicted some fourteen years ago. He has enjoyed a religious conversion. Continued punishment of this person, now much changed from the one who committed the acts in issue is a violation of Due Process under the Sixth Amendment and constitutes cruel and unusual punishment under the Eighth Amendment.

III.

### EVIDENTIARY HEARING

The Magistrate Judge conducted an evidentiary hearing on the matter on October 17 and 18, 2002. The government re-urged its objections to the untimely allegations (DOC 46, p. 3).

Petitioner's position at the hearing was that "the main defense theory" (conspiracy theory) pursued at trial was unsupported by the evidence. Further,

6

that it contradicted the self–defense theory, which was not presented at trial (DOC. 46, p. 14). However, in his testimony at the hearing, Petitioner made clear that his proposed defense, rejected by his lawyers at trial, was that the shooting was an "accident". Molina specifically rejected the notion that his proposed defense ever related to "self–defense" (DOC. 46, p. 97, 100, 106, 107).

On March 17, 2003, the Magistrate Judge issued a Report and Recommendation to the district court to find Molina's trial counsel provided constitutionally ineffective assistance of counsel relating to counsel's pursuit of a trial defense without evidentiary support within the record. (DOC. 20).

A.    Basis of jurisdiction

In the context of the Magistrate Judge's ruling, in his untimely motion of October 9, 2002, Rangel invoked this Court's jurisdiction under 28 U.S.C. §2255. A §2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence." *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted).

IV.

A.    Untimeliness of Molina's Subject Complaint

The U.S. Magistrate Judge notes that the entire basis of Molina's original §2255 motion and his subsequent late filings relate to ineffective assistance of counsel. As a result, the U.S. Magistrate Judge concludes the late filing thus merely clarifies his timely motion and is therefore timely as enjoying "relation–

7

back" treatment (Report p. 11). The U.S. Magistrate seems to interpret Molina's original motion as complaining that trial counsel failed to present Molina's self–defense theory of defense and instead pursued other theories not supported by the evidence (Report p. 11). However, a careful review of Molina's timely motion reveals that, although Molina complains his lawyers failed to develop his proposed defense of "self–defense", Molina makes no complaint regarding the "conspiracy theory" defense presented at his trial. In fact, in Molina's timely motion, Molina seems to praise the viability of the "conspiracy theory" by arguing that the fact that the subject firearm belonged to another agent, Agent Alvarez, while the victim's service revolver was also found within the vehicle, "opens up another avenue that is highly suspect" (DOC. 1 p. 25). The first time Molina complained about the pursuit of a defense without evidentiary support came with the filing of the Proposed Joint Pre trial Order on October 9, 2002 (DOC. 42). At his evidentiary hearing, Molina admits that he acceded to the pursuit of the conspiracy theory (Hearing Trans II, p. 98–104).

On April 24, 1996, a one–year period of limitation was placed upon the filing of motions under §2255. For convictions like Molina's occurring prior to April 24, 1996, the one–year period of limitations runs from April 24, 1996. Molina timely filed his original motion for relief under 28 U.S.C. §2255, Civil Action No. B–97–097, on April 30, 1997[1] (DOC 1). Molina's ability to bring additional charges

---

[1] Molina's filing was deemed timely upon evidence that he provided it to prison authorities before the deadline expired (DOC. 14).

expired at that time. His October 9, 2002 filing is over five years past his limitations period.

If the U.S. Magistrate Judge is correct that the 2002 complaint merely clarifies his timely 1997 complaint, the 2002 complaint may be considered by the Court. If, however, the 2002 complaint brings new allegations, this Court is without jurisdiction to grant Molina's §2255 motion on the basis of such new allegations.

Although compliance with the limitation period is not strictly jurisdictional, the court may only entertain late filed motions if the court determines the petitioner is eligible for "equitable tolling" of the one- year limitation period. Molina neither alleges nor does the record support, nor did the Magistrate Judge rely upon "equitable tolling".

Even if Molina alleged "equitable tolling", such allegation would be without support in the record[2].

---

[2] The petitioner must show "extraordinary circumstances" exist in order to toll the AEDPA's one year period of limitation. This new one-year time limitation is presumptively subject to equitable tolling. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990) (holding that the doctrine of "equitable tolling" is presumptively applicable to suits against private defendants as well as suits against the United States); *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 1792 n. 10, 85 L.Ed.2d 64 (1985) (holding that filing deadlines are generally subject to "equitable tolling"), *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057, 122 S.Ct. 649 (2001)(equitable tolling applicable to claims under §2255), *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)(AEDPA limitation not jurisdictional bar, rather in the nature of a 'statute of limitations' subject to equitable tolling). However, the Fifth Circuit has held that equitable tolling of the AEDPA's time limitation should only be allowed when the relevant facts present sufficiently "rare and exceptional circumstances". *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099, 120 S.Ct. 1834 (2000). Equitable

Molina forwards no justification for his delay in filing.   Trial counsel was

appointed to represent Molina on his trial case, and was not thereby obliged to

---

tolling "applies principally where the plaintiff is actively misled by the defendant (here, the government) about the cause of action or is prevented in some extraordinary way from asserting his rights".... " A garden variety claim of excusable neglect does not support equitable tolling". *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *Armand v. Strack*, 1999 WL 167720 at 4 (E.D.N.Y. Feb. 19, 1999)(No. CV 98-6650)(allegations petitioner received poor legal advice and insufficient legal library insufficient to justify equitable tolling), *Dimetry v. Department of U.S. Army*, 637 F. Supp. 269, 271 (E.D.N.C.1985)(equitable tolling not appropriate where the failure to timely file was allegedly caused by the plaintiff's reliance on advice of counsel), *Nguyen v. Mervau*, 1998 WL 556628 at 2 (N.D. Cal. Aug. 24, 1998)(No. C 98-2038)(petitioner's lack of fluency in English language and inability to find jailhouse lawyer to assist him are not extraordinary circumstances warranting equitable tolling). But See: *United States v. Patterson*, 211 F.3d 927, 932 (5th Cir. 2000)(petitioner misled by district court as to filing deadline represented "rare and extraordinary" circumstances warranting equitable tolling), *Davidson v. United States*, 209 F.3d 723, 2000 WL 177656 (11th Cir. 200)(Same).  Equitable tolling analysis should include whether petitioner actively pursued judicial remedies by filing defective instruments within the limitations period.  *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 1868 (1998).

Molina has neither asserted nor demonstrated "rare and extraordinary circumstances" warranting equitable tolling.  Before a request for an extension of time to file a § 2255 motion is granted, the district court must first be satisfied that "extraordinary circumstances" beyond a prisoner's control justify the equitable tolling of the AEDPA's clearly established period of limitation. *Alvarez-Machain v. United States*, 107 F.3d 696, 701(9th Cir. 1997).  And district judges should only "authorize extensions when this high hurdle is surmounted."  *Calderon v. United States Dist. Ct. Cent. Dist. Of Cal.*, 128 F.3d 1283, 1286 (9th Cir. 1997).  In fact, because the clearly established purpose of the AEDPA's one year period of limitation is to "accelerate the federal habeas process, ... [e]quitable tolling will not be available in most cases." See *Id.*

Courts have held that when external forces, rather than plaintiff's lack of diligence, account for the failure of a complainant or movant to file a timely claim, equitable tolling of the statute of limitations is proper. *Seattle Audubon Society v. Robertson*, 931 F.2d 590, 595 (9th Cir.1991); see also *Forti v. Suarez-Mason*, 672 F.Supp. 1531, 1549-50 (N.D.Cal.1987). For example, when a plaintiff has been unable to file a complaint with a court of competent jurisdiction due to the extraordinary conditions and circumstances of war, statute of limitations are equitably tolled. *Seattle Audubon Society*, 931 F.2d at 596 (citations omitted).

assist Molina in any collateral attack of the judgement. *Miranda v. United States*, 455 F.2d 402, 404 (2nd Cir. 1972). There is no constitutional right to counsel for the investigation or preparation of a §2255 claim. *Vandenades v. United States*, 523 F.2d 1220, 1225 (5th Cir. 1975). All of the factual claims contained within the Joint Pre Trial Order would have been known to Molina at the time of his trial. Molina's reliance upon a "jailhouse lawyer" does not relieve Molina's obligation to employ due diligence. Molina knew the subject claims were not included within his original motion, yet filed the motion anyway. Molina was aware of the factual issues since his trial in 1987, yet did not include it in his original §2255 motion filed ten years after his sentencing. As the case law above indicates, reliance upon advice of counsel does not justify the equitable tolling of §2255. *Armand v. Strack*, 1999 WL 167720 at 4 (E.D.N.Y. Feb. 19, 1999)(No. CV 98–6650)(allegations petitioner received poor legal advice and insufficient legal library insufficient to justify equitable tolling); *Dimetry v. Department of U.S. Army*, 637 F. Supp. 269, 271 (E.D.N. C 1985)(equitable tolling not appropriate where the failure to timely file was allegedly caused by the plaintiff's reliance on advice of counsel).

Additionally, as the above case law suggests, Molina's ignorance of the law and the unavailability of legal advice in prison do not justify the equitable tolling of §2255. *Nguyen v. Mervau*, 1998 WL 556628 at 2 (N.D. Cal. Aug. 24, 1998)(No. C 98–2038)(inability to find jailhouse lawyer to assist him are not extraordinary

circumstances warranting equitable tolling). Of course here, Molina enjoyed legal assistance and timely filed his original motion.

B.   Timeliness & "Relation Back"

In none of Molina's filings does Molina broach the subject of the untimeliness of the new allegations brought within the Joint Pre Trial Order. In responding to the government's objection to the untimeliness of the subject complaint, and when pressed by the U.S. Magistrate Judge at the October, 2002 evidentiary hearing, Molina argued that there were no "new legal grounds" but rather "fleshing out the existing (timely) grounds" (DOC. 46, p. 3).

This position was apparently adopted by the U.S. Magistrate Judge in the March 17, 2003 Report. Under FED. R. CIV. PROC. 15(c), late supplements to timely allegations which merely clarify the timely allegations enjoy "relation–back" status to the original timely §2255 motion.

C.   "Relation Back"

FED. R. CIV. PROC. 15(a), permits parties to amend their pleadings after a responsive pleading has been filed "only by leave of court or by written consent of the adverse party". *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998). Molina has neither sought nor obtained either leave of court or written consent of the government. Even if he had, the late–filed claims may not be heard.

Although ordinarily, under FED. R. CIV. PROC. 15(a), amendments of habeas claims may be "freely given when justice so requires". A different situation arises

when the amendments are filed after the AEDPA's statute of limitations has run. *United States v. Espinoza-Saenz*, 235 F.3d 501, 503–504 (10th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999). Permitting claims to be filed following the expiration of the statute of limitations would "frustrate the intent of Congress" and amount to "judicial rescission" of the limitations period. *Id.* Although "clarification" of timely filed claims may be permitted to be filed by the court following the running of the limitations period, new issues do not enjoy "relation back" treatment. *Id., United States v. Lampton*, 2001 WL 263094 (E.D. La. 2001)(NO. CR. A. 96-125)(discussion regarding "relation back"). "A number of circuit courts have held that an untimely amendment to a §2255 motion (i.e. one filed after AEPDA's one-year statute of limitations) that clarifies or amplifies a claim or theory in the original motion may, in the district court's discretion, relate back to the original motion if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to press a new theory. *United States v. Palmer*, 296 F.3d 1135, 1142 (DC. Cir. 2002 ). See, e.g., *Pittman*, 209 F.3d at 317; *United States v. Thomas*, 221 F.3d 430, 433–34 (3rd Cir.2000); *Duffus*, 174 F.3d at 337. Compare *Pruitt v. United States*, 274 F.3d 1315, 1319 (11th Cir.2001); *Pittman*, 209 F.3d at 317–18; *Duffus*, 174 F.3d at 335; with *Williams v. Vaughn*, 3 F.Supp.2d 567, 570 (E.D.Pa.1998) ("both motions allege constitutional defects surrounding the same 'occurrence'-- motioner's trial and penalty phases")". "The untimely claim must arise from the "same set of facts" as

the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."" *Pittman*, 209 F.3d at 318 (internal quote omitted). In *Pittman*, the Fourth Circuit found that the amended claims of ineffective assistance arose out of different conduct and transactions from those addressed in Pittman's first motion that challenged the district court's jurisdiction and the imposition of an enhanced sentence. See *Pittman*, 209 F.3d at 318. Moreover, Pittman was aware of the deficiencies alleged in his motion to amend even at the time of his initial motion. He knew that no appeal had been filed on his behalf. Further, the presentence report, which Pittman admits was available to him, recommended an enhancement for obstruction of justice. The claims in Pittman's motion to amend were not overly technical and he could have easily included them in his original §2255 motion. *Pittman*, 209 F.3d at 318. Thus, while an amendment offered for the purpose of adding to or amplifying the facts already alleged in support of a particular claim may relate back, see *Thomas*, 221 F.3d at 436 (observing that an amendment seeking "to correct a pleading deficiency by expanding the facts but not the claims alleged in the petition" would clearly fall within Rule 15[c]), one that attempts to introduce a new legal theory based on facts different from those underlying the timely claims may not, see *Dean*, 278 F.3d at 1221 ("Congress did not intend Rule 15[c] to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts."). "These principles are faithful both to the underlying purposes of Rule 15(c) and to the concerns about

14

drawn-out and unlimited collateral attacks on federal criminal judgments evinced by the passage of AEDPA. They ensure that relation back will be allowed only where the original motion provides adequate notice of the prisoner's claims and the proposed amendment would neither change the fundamental nature of those claims nor prejudice the Government's defense by requiring it to prepare its case anew." See 6A WRIGHT & MILLER §1497 at 84-85.

*United States v. Hicks*, 283 F.3d 380, 388-89, 350 U.S.App.D.C. 279, 287-88 (D.C. Cir. 2002). "Instead, in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type'." *Pittman*, 209 F.3d at 318 ('both time and type'); *Duffus*, 174 F.3d at 337 ('same set of facts'); *Craycraft*, 167 F.3d at 457 ('same set of facts' and 'both time and type'). "For example, in *Craycraft*, the Eighth Circuit held that an untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely claims of ineffective assistance of counsel for not pursuing a downward departure, not objecting to the characterization of the drugs, and not raising challenges to his prior state conviction". *Craycraft*, 167 F.3d at 456-57. "The court observed that amendments to a pleading under Rule 15(c) 'relate back' only if the claim asserted in the original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence." *Id.* at 457. *Davenport v. United*

*States*, 217 F.3d 1341, 1344 (11th Cir. 2000), *cert. denied*, 532 U.S. 907, 121 S.Ct. 1232 (2001).

Here, Molina's untimely allegation, that his lawyer pursued a theory (conspiracy theory) without support in the evidence, is an entirely different theory than his timely allegation that his lawyers failed to present his "self defense" theory. The fact that each complaint are couched in terms of ineffective assistance or relate to the presentation of defenses does not serve to establish that each arose out of the same conduct, transaction, or occurrence . *Thomas*, 221 F.3d at 436. Although, the government concedes that clarification of timely issues "relate back" and are thereby timely, this does not extend to new legal theories.

The Court is without jurisdiction to entertain Molina's late filed claims.

Accordingly, the government objects to the Magistrate Judge's Report and Recommendation, its factual findings and legal conclusions, and moves this Court to dismiss Molina's late filed claims as untimely.

C.    <u>Conflicting Defenses</u>

The Report takes the position that trial counsel "predicate[d] his client's entire defense" on the "conspiracy theory" (Report, p. 13). Further, that had counsel pursued "self–defense", there is a "reasonable probability that the result of the proceeding would have been different." In fact, the "conspiracy theory", although pursued energetically by the defense, was not the only theory pursued.

16

The defense also pursued alternatively the "accident" theory as well as the "self defense" theory.

Alternate, even inconsistent, defenses are permitted in criminal law. "Indeed, the most successful criminal attorneys are often those who can create a reasonable doubt in the jurors' minds by throwing up one or two or more plausible alternatives to the defendant's guilt". *Moore v. Johnson,* 194 F.3d 586, 611 (5th Cir. 1999); *Turner v. Johnson*, 106 F.3d 1178, 1187 (5th Cir. 1997)(broad defense offered several possibilities).

Counsel's performance must be analyzed in the context of the government's evidence. The government's evidence and theory of the case involved a life and death struggle by the victim and Molina over the agent's gun. The operative physical facts of the event were essentially uncontested. The agent pulled a gun on Molina. Molina attempted to wrestle the gun away from the victim. Molina was shot in the leg prior to the agent being shot in the chest. (See Agreed Facts in Joint Pre Trial Order)(Tr. PP. 694–702). The foundation for the defense of "accident" and "self defense" were provided by the government's own evidence and theory of the case (Tr. P. 828, 829). Furthermore, counsel voir dired the panel on "self defense" (Tr. P. 99). The government's evidence included Molina's statement that the gun just went off and that the victim was trying to "kill" me and steal my marihuana (Tr. P. 700, 801, 805). The case essentially turned on a credibility analysis regarding whether Molina was told he was under arrest by federal agents,

and whether Molina obtained control over the pistol immediately prior to the fatal shot.

What other evidence was available to offer in support of the self defense case? What evidence was neglected by counsel for Molina? At his October 2002 hearing, Molina concedes his sole defense was that of "accident" (Hearing Trans II, p. 100, 106). Molina's testimony would be problematic, as he would have essentially denied he shot the agent in "self–defense", but rather would have claimed the shooting was accidental (Tr. P. 920). Regardless, evidence supporting the "accident" theory was presented at trial.

Counsel developed evidence in support of "self defense" and suggesting the defendant's actions occurred in the "heat of passion". The alternate defense was presented: that four people (Agent Ramos, CI Ortiz, CI Rodriguez, and Molina) were struggling between themselves for the revolver (*Motion* at 18), and that he was trying to push the gun away from his [Molina's] head (*Motion* at 10–11) when the gun discharged. Counsel confronted the government's evidence by pointing out that no forensics were performed to determine the source of the fired bullets (Tr. P. 380–81). Further, trial counsel had requested instructions on a voluntary manslaughter, sudden passion, self–defense, accident,  apparent danger, and converse of self–defense (Defendant's requested jury instruction no. 1), intoxication (Defendant's requested jury instruction no. 3), assault one a federal officer (*i.e.,* "whether the Defendant knew the victim to be a Federal officer and

only acted as he did because of a reasonable, good faith belief that he needed to defend himself against an assault by a private citizen). (Tr. 826-32). Indeed the jury was fully charged on "self defense" (Tr. P. 857).

Unfortunately for Molina, the government's evidence at trial refuted this defense and the jury rejected it.

During closing argument, defense counsel also argued that Molina believed he was being attacked by dangerous drug dealers, that he fought back in self-defense after being shot with the first fire, and that he had no malice aforethought when the gun discharged as he was fighting for it. He also argued that if the jury believed Ortiz, then Molina was acting out of sudden passion and did not have the requisite intent to commit premeditated murder (Tr. 881-86). *Id.*

Molina concedes that the defenses of accident and of "self-defense" were pursued at trial (DOC 46, p. 106). The jury was sufficiently apprized of evidence in support of "self-defense". The government's position was that the death occurred following a struggle over the agent's pistol. All counsel for Molina needed to do was to argue that the fatal shot occurred prior to Molina gaining control over the pistol, while the government argued that the fatal shot occurred after Molina gained control of the pistol. That was essentially the crux of the case. Even if the "conspiracy theory" was without basis, the jury heard evidence in support of accident and self-defense. The jury was charged on those theories.

We must presume the jury followed the district court's instructions and passed upon those defenses.

In summary, Molina has failed to demonstrate that counsel's performance so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result", or that trial attorneys' performance was "under all circumstances unreasonable under the prevailing norms"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Respectfully submitted,

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

Mark M. Dowd
Assistant United States Attorney
TX Bar No. 06070500
SD Tex ID No. 9314
600 E. Harrison, # 201
Brownsville, TX 78520
(9563) 548-2554

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the above document has been personally served on this the 10th day of April, 2003 to:

Paul Hajjar
Asst. Federal Public Defender
Attorney for Petitioner
P.O. Box 2163
Brownsville, TX 78522-2163

Mark M. Dowd
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FELIPE MOLINA-URIBE          *
                             *
v.                           *
                             *     CIVIL ACTION NO. B-97-097
UNITED STATES OF AMERICA     *
(CRIMINAL NO. B-87-01-S1)    *

## ORDER

After a *de novo* review of the file and record in the above cause, the Court

declines to adopt the Magistrate Judge's Report and Recommendation in the above

cause, recommending the Court grant Petitioner's subject §2255 motion. The

Court finds that the claim upon which the Magistrate Judge relied was not filed in

a timely manner. Neither alleging nor demonstrating "equitable tolling", the

Petitioner's ability to file claims under §2255 expired on April 26, 1997.

Petitioner's instant claim was not filed until October 9, 2002 nor has the petitioner

demonstrated his untimely claims "related back" to his original timely claims under

FED. R. CIV. P. 15(c).

Accordingly, Petitioner's allegations filed pursuant to §2255 are DISMISSED.

SIGNED this _____ day of _____ 2003.

_____
UNITED STATES DISTRICT JUDGE